Vicki Joy BAIRD, Plaintiff–Appellant,

v.

NHP MILL CREEK APARTMENTS, Limited Partnership, Defendant–Appellee,

and

NHP Mill Creek Apartments, Limited Partnership, Defendant/Cross–Plaintiff,

v.

Standard Coin Meter and Coinmach Corporation (a Successor Corporation), Defendants/Cross–Defendants.

No. 02–1256.

United States Court of Appeals, Sixth Circuit.

April 9, 2004.

Before COLE and CLAY, Circuit Judges; and COLLIER, District Judge.*

CLAY, Circuit Judge.

Plaintiff, Vicki Joy Baird, appeals from the district court's order granting summary judgment in favor of Defendant, NHP Mill Creek Apartments ("Mill Creek"), on Plaintiff's claims of liability for personal injury in this diversity of citizenship action. For the reasons stated below, this Court **AFFIRMS** the district court's order granting Defendant Mill Creek's motion for summary judgment against Plaintiff, which is the only claim remaining for disposition on appeal.

## I. BACKGROUND

### A. Procedural Background

This action arose out of a complaint originally filed by Plaintiff in the Genesee County Circuit Court against Defendant Mill Creek and Defendants Standard Coin Meter and Coinmach Corporation ("Coinmach").[1] Defendant Mill Creek successfully petitioned for removal to the United States District Court for the Eastern District of Michigan. Defendant Mill Creek then filled a cross-complaint against Defendant/Cross–Defendant Coinmach for breach of contract referencing Coinmach's maintenance responsibilities pursuant to the lease agreement between the parties.

As lessee of the subject laundry room, Defendant Coinmach was responsible for the supply and maintenance of the washing machines therein. The lease agreement between CLIO Apartment Limited Partnership (representing Mill Creek Apartments) and Standard Coin Meter Company provided that "Tenant [Coinmach] shall keep the laundry space in a clean and safety [sic] maintained condition ..." and that "Tenant [Coinmach] shall service the equipment and keep the same in good repair at its sole expense." (J.A. at 254–55.) Defendant Mill Creek, however, employed maintenance workers to service the buildings, which included an outside contractor who cleaned the laundry room premises weekly.

Defendant Coinmach filed a motion for summary judgment in connection with Plaintiff's liability claim based on its position that Coinmach had no notice of the alleged dangerous condition which led to Plaintiff's injuries, and also filed a motion for summary judgment on Cross–Plaintiff Mill Creek's cross claim. Plaintiff opposed Coinmach's motion for summary judgment; however, the district court granted summary judgment in Coimach's favor on the basis that Coinmach did not have notice. Plaintiff has not appealed Coinmach's summary judgment order. Prior to oral arguments, Defendant Mill Creek filed a joinder in Defendant Coinmach's summary judgment motion, which Plaintiff opposed. The district court granted Mill Creek's summary judgment motion in its January 31, 2002, order, from which Plaintiff now appeals.[2]

### B. Factual Background

This case involves a slip-and-fall accident that occurred on February 16, 1998, involving Plaintiff, a sixteen year old fe-

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Coinmach is a successor corporation of Standard Coin Meter, to whom Defendant Mill Creek leased the subject laundry room where Plaintiff's injury occurred.

2. Based on both Coinmach's and Mill Creek's summary judgment motions against Plaintiff, the district court also ordered that Cross–Defendant Coinmach's motion for summary judgment on Cross–Plaintiff Mill Creek's cross claim was denied as moot.

male, who lived at the Mill Creek Apartment complex with her mother and brother. Plaintiff testified she slipped on water in the laundry room of a building in Defendant's apartment complex. The laundry room had two washers and two dryers, all of which were supplied and maintained by Coinmach.

On the day of the accident, Plaintiff claims she placed her clothes in a washer and then later returned to switch the clothes to the dryer. Plaintiff, carrying a basket of wet clothes, turned to walk to the dryer, and slipped and fell on what she claims was a puddle of water. After falling, she claims she noticed the water on the ground that caused the fall, although she had not noticed it prior to the fall. The water appeared to have come from a leak in one of the washers. That same day, on February 16, 1998, Plaintiff reported to McLaren Hospital for emergency care. Plaintiff now claims that injuries from the fall have substantially limited her ability to engage in leisure and work activities.

Based on its findings at oral argument, the district court (1) granted summary judgment in favor of Defendant Coinmach on Plaintiff Baird's liability claims against Coinmach, for the reasons stated by the district court at the summary judgment hearing, and dismissed Plaintiff's cause of action against Coinmach; (2) granted summary judgment in favor of Defendant Mill Creek on Plaintiff Baird's claims of liability against Mill Creek, for the reasons stated by the district court at the summary judgment hearing; and (3) denied as moot the motion for summary judgment of Cross–Defendant Coinmach on Cross–Plaintiff Mill Creek's claims against Coinmach, and dismissed Mill Creek's cross-complaint against Coinmach.

Although the district court granted summary judgment in Coinmach's favor be-cause "clearly there was no notice to Coinmach of any problem as plaintiff himself [sic] does acknowledge," the district court granted summary judgment to Mill Creek based upon two independent grounds-the lack of actual notice, and the "open and obvious" doctrine. The court stated that "the problem of water on the floor was open and obvious. The two machines are by top loading. No special circumstance requir[ed] someone to walk through water to go from one machine to the next, and ... there is no evidence of notice to Mill Creek of a problem...." (J.A. at 406–07.)

On February 21, 2002, Plaintiff filed a timely notice of appeal, solely contesting the grant of summary judgment to Defendant Mill Creek.

## II. STANDARD OF REVIEW

This Court reviews the grant or denial of summary judgment *de novo. Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 466 n. 10, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Johnson v. Econ. Dev. Corp.,* 241 F.3d 501, 509 (6th Cir.2001). Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to a judgment as a matter of law. *Kocsis v. Multi–Care Mgmt., Inc.,* 97 F.3d 876, 882 (6th Cir.1996). In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. Our "inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict." *Id.*

The "mere possibility" of a factual dispute is not sufficient to create a triable

case. *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986). To defeat summary judgment, the plaintiff "must come forward with more persuasive evidence to support [her] claim than would otherwise be necessary." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the defendant successfully demonstrates, after a reasonable period of discovery, that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When determining whether to reach this conclusion, this Court views the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Williams v. Int'l Paper Co.,* 227 F.3d 706, 710 (6th Cir.2000).

### III. ANALYSIS

### A. The Legal Framework: Premises Owner Negligence Under Michigan Law

Under Michigan law the four required elements for a negligence suit are (1) duty, (2) breach. (3) injury, and (4) proximate cause. *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 485 N.W.2d 676, 681, n. 10 (1992) ("The elements of a cause of action in negligence are as follows: 1. That the defendant owed a legal duty to the plaintiff; 2. That the defendant breached or violated the legal duty it owed to the plaintiff; 3. That the plaintiff suffered damages; and 4. That the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff.").

In the instant action, both Plaintiff and Defendant Mill Creek state that the duty owed was that of a business owner to a business invitee, since the laundry room within the apartment complex is a business operated by the landlord. Under this duty, if Defendant Mill Creek did not create the allegedly dangerous condition, then actual or constructive notice would be a prerequisite to Defendant Mill Creek's liability. *Whitmore v. Sears, Roebuck & Co.,* 89 Mich.App. 3, 279 N.W.2d 318, 321 (1979) (stating that in a business owner-business invitee relationship, "in order to recover from Sears, plaintiff must show either that an employee of Sears caused the unsafe condition or that a servant of Sears knew or should have known that the unsafe condition existed ....") (citations omitted).

Nevertheless, even if there is actual or constructive notice, a defendant still is not liable if, first, the condition was open and obvious, and second, the condition was not unreasonably dangerous. As stated in *Bertrand v. Alan Ford, Inc.,* 449 Mich. 606, 537 N.W.2d 185, 187 (1995):

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.

(emphasis in original).

Plaintiff raises issues in her claim that correspond to the legal framework for establishing the negligence of a premises owner: first, Plaintiff alleges Defendant Mill Creek possessed actual or constructive notice; second, Plaintiff alleges the condition was not open and obvious; and

third, Plaintiff alleges even assuming, *arguendo*, that the condition was open and obvious, it was still unreasonably dangerous.

## B. Notice Requirement

In the analysis of the first issue, we examine the requirement of actual or constructive notice. Actual notice is awareness of a condition. If there is no actual awareness, a plaintiff may then plead constructive notice, where the defendant should have known of the dangerous condition since "[n]otice may be inferred from evidence that the unsafe condition has existed for a length of time sufficient to have enabled a reasonably careful [premises owner] to discover it...." *Whitmore*, 279 N.W.2d at 321.

■ In the instant action, Plaintiff provides no evidence that Defendant Mil Creek had actual notice of the alleged unsafe conditions in the laundry room prior to Plaintiff's injury; however, Plaintiff argues Defendant Mill Creek had constructive notice of the conditions based on the building manager's assumption of the cause of Plaintiff's accident on the day of the accident. Plaintiff argues that Jeffrey Brown, the custodian charged with the maintenance of the laundry room that day, testified that the Building manager, Jan Pratt, "asked [him] to go over and make sure that the drain to the washer wasn't out of the wall, if it was to put it back in, if there was water on the floor to clean it up." Plaintiff argues, based on Pratt's testimony, that it may reasonably be in-

ferred that Pratt was aware of the precise cause of Plaintiff's fall and took no precautions to prevent it prior to the accident. Nevertheless, this is the sole piece of evidence Plaintiff puts forth to suggest that Defendant Mill Creek had any notice as to the water leakage in the laundry room prior to the day in question.[3] There is no evidence that Defendant Mill Creek actually caused the water leakage or that it was a reoccurring problem. According to the record, Pratt testified that she was not aware of any water leakages in the past.

The facts in the record clearly state that Pratt did not tell Brown the drain was out of the wall when Brown called Pratt to make her aware of the leakage in the laundry room. Furthermore, Pratt did not tell Brown that the drain had come out of the wall in the past. According to the record, Pratt had ten years of building management experience. Given Pratt's experience, it is not unreasonable to interpret her statement to Brown literally, as a suggestion or an order to "make sure that the drain to the washer wasn't out of the wall." Plaintiff would like to argue that Pratt's statement constituted an admission, claiming it indicated Pratt knew that there had been previous problems with the drain pipe pulling away from the wall in the past; however, the evidence here does not support such a claim. In this instance, Plaintiff has the burden of presenting evidence of notice regarding dangerous conditions. *Clark v. Kmart*, 465 Mich. 416, 634 N.W.2d 347, 349 (2001) (citing *Whitmore*, 279 N.W.2d at 321). Plaintiff failed in that

3. Plaintiff does include in the record an affidavit from a private investigator Plaintiff hired to inspect the laundry room, which included observations of worn paint in front of the washer, impliedly caused by water damage, as well as a dirty water stained track leading from the back of the washer to the drain, supposedly caused by "longstanding leakage problems." (J.A. at 361.) Neverthe-

less, Plaintiff did not put forth evidence qualifying the investigator as an expert on water damage or building damage caused by water, nor did Plaintiff's investigator go to the scene of the accident any sooner than two months after Plaintiff's accident. Therefore, the investigator's observations cannot speak to the conditions that were present on the day of Plaintiffs accident.

regard; and therefore, the district court did not err by refusing to assume that Pratt's suggested course of action as building manager constituted an admission of prior knowledge.

## C. Open and Obvious Condition

As stated in the analysis of section A, *supra*, under Michigan law, even if the defendant has notice of a dangerous condition, defendant is not negligent if the condition was open and obvious, unless the condition is unreasonably dangerous. Therefore, the issue here is whether the alleged condition was open and obvious (and section D, *infra*, deals with whether it was unreasonable).

The Michigan Supreme Court in *Lugo v. Ameritech Corp.*, clarified the scope of liability of premises possessors whose property may include open and obviously dangerous conditions. 629 N.W.2d at 386 (Mich.2001) (holding the general rule in Michigan is that a premises possessor is not required to protect an invitee from open and obvious dangers; but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk). The test used to determine whether or not a condition is open and obvious is whether or not the average person of ordinary intelligence would have discovered the danger upon casual inspection. *Bertrand*, 537 N.W.2d at 189. In *Lugo*, the Michigan Supreme Court barred plaintiff's claim for injuries sustained when stepping into a pothole in the defendant's parking lot because the open and obvious doctrine accounts for conditions that do not involve an especially high likelihood of injury. 629 N.W.2d at 387. There, the plaintiff was foreclosed from a judgment in her favor since an " 'ordinarily prudent' person [ ] would typi-

cally be able to see the pothole and avoid it." *Id.* at 388. Additionally, the court took into account the reasonable likelihood of a condition's location when determining the reasonableness of an "ordinarily prudent person's" awareness of such conditions; like the likelihood of a pothole in a parking lot. *Id.*

■ Similar to *Lugo*, the district court in the present action did not err in determining that a puddle of free standing water in the middle of a laundry room was, in fact, an open and obvious condition. Testimony in the record establishes that Plaintiff fell in an open area of the laundry room, between the washers and the dryers. There were no obstructions in the room near the water that would have prevented a reasonably prudent person from noticing the water. Brown testified that when he entered the laundry room, he observed a large area of standing water in an open area of the room. Furthermore, the fact that Plaintiff claims that she did not notice the wet condition of the floor is insufficient to disprove the open and obvious nature of the alleged dangerous condition. *Novotney v. Burger King Corp.*, 198 Mich.App. 470, 499 N.W.2d 379, 381 (1993) (stating that "it is not relevant to the disposition of this matter whether plaintiff actually saw the [dangerous condition]. Rather, it is necessary for plaintiffs, to have their claim survive the motion for summary disposition, to come forth with sufficient evidence to create a genuine issue of material fact that an ordinary user upon casual inspection could not have discovered the existence of the [alleged dangerous condition]"). Therefore, absent special aspects of the open and obvious condition that would warrant a possessors additional care, Defendant would not be liable for Plaintiff's injuries.

The Michigan court does caution against ruling in favor of defendants when relying

solely on plaintiff's subjective lack of care on a possessor's premises. *Lugo*, 629 N.W.2d at 390 (holding that "it is important for courts in deciding summary disposition motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff. In the present case, there was no evidence of special aspects that made the open and obvious pothole unreasonably dangerous.").

In deposition, when asked if Plaintiff was paying attention to the floor in the laundry room when Plaintiff first put her clothes in the washer, Plaintiff admitted that she was not. (J.A. at 299) (in response to the question, "you weren't paying attention, you weren't able to see the floor in front of you, right?," Plaintiff answered, "Right."). When asked if she was paying attention to the floor in the laundry room when Plaintiff returned to the room, to switch her clothes to the dryer, Plaintiff admitted that she was not. (J.A. at 299) (in response to the question, "[a]gain, you weren't paying attention to the ground that you were walking on?," Plaintiff answered, "[c]orrect."). *Id.* Plaintiff also claimed that the large basket of clothes she was carrying obstructed her view of the floor's wet condition; however, much like the pothole in the parking lot in *Lugo*, a water puddle in a laundry room is not so unlikely that a reasonable person would not be expected to discover one. 629 N.W.2d at 390. Furthermore, as in *Lugo* and *Novotney*, since the condition was not obstructed from view, the fact that Plaintiff did not personally notice the condition is irrelevant. *Id.; see also Bertrand*, 537 N.W.2d at 189.

## D. Special Aspects Exception

As stated previously, under Michigan law, even if the defendant has notice of a dangerous condition, there is no negligence if the condition was open and obvious, unless the condition is unreasonable. Here, we deal with the issue of whether the alleged open and obvious condition was unreasonable.

As a general rule, a "premises possessor is not required to protect an invitee from open and obvious dangers, but if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 629 N.W.2d at 387; *see also Bertrand*, 537 N.W.2d at 187 ("an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee").

■ Plaintiff argues that two special aspects of the laundry room's condition made it unreasonably dangerous for all tenants in the building. First, Plaintiff argues that the building manager's knowledge of the alleged faulty drain, based on her comments to Mr. Brown, established that Defendant Mill Creek in fact knew of the potential for injury and took no further precautions. Second, Plaintiff argues that the water's location in the laundry room, directly in the pathway between the washer and the dryer, made it unreasonably dangerous, since it was foreseeable for a customer carrying clothes from the washer to the dryer to inevitably encounter the dangerous condition. These arguments, however, lack the necessary special aspects of a condition needed to impute liability to a premises possessor who has an open and obvious condition on his land.

In *Lugo*, the court set forth examples of special aspects that would make an open and obvious condition unreasonably dangerous. 629 N.W.2d at 387–88. The court's first illustration of an unreasonable

open and obvious condition was that of a commercial building with a floor covered with standing water over which a customer wishing to exit the building must leave and only one exit for the general public. The court observed that under such circumstances, "the open and obvious condition is effectively unavoidable." *Id.* The court's second illustration was that of an unguarded thirty-foot-deep pit in the middle of a parking lot. According to the court, while such a condition might well be open and obvious and one would likely be capable of avoiding the danger, nevertheless "this situation would present such a substantial risk of death or severe injury to one who fell in the pit it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id.*

Plaintiff's arguments do not rise to a similar level of unreasonableness, under Michigan law, for which liability may be imputed to a premises possessor in this situation. Plaintiff's notice argument does not constitute an unreasonably dangerous aspect, especially since the level of danger of the condition in the instant case cannot be compared to those conditions described in the *Lugo* decision. *Id.* Additionally, Plaintiff's location argument does not illustrate the inevitability of one's injuries, as does the *Lugo* decision's example of standing water blocking an exit. Plaintiff did not have to place herself in danger by walking through the standing water, since testimony stated the puddle was in the middle of the room, not blocking any exits. Although the standing water in the instant action blocked the activity in which Plaintiff was engaged, that of washing and drying clothes, an ordinarily prudent individual would not have had to risk injury to continue such activity. Plaintiff could have circumvented the water, or exited the laundry room to obtain maintenance assistance for the alleged dangerous water

condition. Again, Plaintiff's subjective awareness of the condition is an insufficient argument, when as a matter of law the court must instead look at the objective nature of the condition of the premises. *Id.* at 390.

Given the lack of evidence of any notice to Defendant Mill Creek, either actual or constructive, of the water conditions, and the objective nature of such conditions in the laundry room, the reasonableness of the type of condition, and the location of the condition, the district court did not err in determining that the free standing water in Plaintiff's laundry room was an open and obvious condition, for which Defendant Mill Creek owed no additional duty of care. The Court therefore **AFFIRMS** the district court's order granting summary judgment in favor of Defendant Mill Creek.