Jerry BROWN, Plaintiff,

v.

**PRAIRIE FARMS DAIRY, INC., d/b/a Southern Belle Dairy, Defendant.**

No. 3:10–cv–01136.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 25, 2012.

Joseph A. Napiltonia, Law Office of Joe Napiltonia, Nashville, TN, for Plaintiff.

Marcus M. Crider, Waller, Lansden, Dortch & Davis, Nashville, TN, John F. Kuenstler, Barnes & Thornburg, LLP, Chicago, IL, for Defendant.

## *ORDER*

JOHN T. NIXON, Senior District Judge.

Pending before the Court is Defendant Prairie Farms Dairy, Inc., d/b/a Southern Belle Dairy's Motion for Summary Judgment ("Motion") (Doc. No. 26), filed along with a Memorandum in Support (Doc. No. 27), a Statement of Undisputed Material Facts (Doc. No. 28), and other supporting materials (Doc. Nos. 29–1 to 29–7). Plaintiff Jerry Brown has filed a Response in Opposition (Doc. No. 37), along with a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 40), his own Statement of Undisputed Material Facts (Doc. No. 38), and other supporting materials (Doc. No. 39). Defendant subsequently filed a Reply (Doc. No. 42), along with a Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 43) and supporting materials (Doc. Nos. 44–1 to 44–8). For the reasons given herein,

Defendant's Motion is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

### A. Factual History [1]

Plaintiff is a former employee of Defendant, having begun work as a route sales driver at Defendant's Nashville Branch on June 27, 2007. Plaintiff's job required him to repeatedly lift, load, and pull forty-five-pound cases of milk, stack the cases up to six high, and reach, push, bend, twist, and work in extreme temperatures. Plaintiff earned $600 per week the entire time that he was employed by Defendant.

Throughout the time of his employment with Defendant, Plaintiff served as a member of the Army National Guard. While in the military, Plaintiff assisted with the driving and operation of a HEMTT truck that had a hydraulic crane on the back. Plaintiff has admitted that his job duties for the military were different from his job duties for Defendant. Plaintiff took military leaves of absence on numerous occasions while working for Defendant.[2] His final military leave began December 5, 2009, and was scheduled to last approximately one year. On January 7, 2010, Plaintiff was honorably released from active duty due to a wrist injury, which was later diagnosed as carpal tunnel syndrome. Plaintiff thus served on active duty for thirty-four days during his final military leave.

On January 18, 2010, Plaintiff contacted Kim Wesley, Defendant's Administrative Assistant to the Human Resources Depart-

ment and the Manufacturing Department, to tell her that he had returned from active duty because of an injury to his wrist. Plaintiff told Ms. Wesley that he was planning to see a doctor to have his wrist examined and that he would let her know the extent of his injury. Defendant maintains a policy requiring employees to submit a doctor's statement if the employee is absent due to injury. Accordingly, Ms. Wesley told Plaintiff that he needed to provide documentation regarding his current medical condition, military paperwork showing when Plaintiff had been released from active duty, and military paperwork showing the length of time he was released from active duty. She also requested that Plaintiff inform Defendant when he was released to return to work. Subsequently, on January 25, 2010, Plaintiff provided Defendant with a DD–214 Certificate of Release or Discharge from Active Duty form.

Director of Human Resources Rich Fields decided to terminate Plaintiff's employment on February 12, 2010, which Mr. Fields testified was due to Plaintiff's failure to provide a doctor's statement or any documentation showing his current medical condition. In late February of 2010, Alisha Queen, an Ombudsman with the Department of Defense, contacted Defendant regarding Plaintiff's termination. Defendant told Ms. Queen that it expected Plaintiff to provide a doctor's statement and an outlook for returning to work after surgery, which Plaintiff underwent on March 10, 2010.

---

**1.** Facts in this section are undisputed and taken from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 40), and Defendant's Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 43), unless otherwise noted.

**2.** In particular, Defendant took leaves of absence on the following dates: March 28, 2008

to March 31, 2008; April 1, 2008 to April 11, 2008; May 19, 2008 to May 30, 2008; June 2, 2008 to June 6, 2008; February 23, 2009 to February 27, 2009; March 16, 2009 to March 20, 2009; April 30, 2009 to May 1, 2009; June 25, 2009 to June 26, 2009; July 10, 2009; December 2, 2009 to December 4, 2009; and December 5, 2009 to January 8, 2010.

Defendant provided Plaintiff with the opportunity to return to work if he submitted the medical documentation, and thus sent a letter to Plaintiff on March 11, 2010 stating that it would need the following documents: (1) a doctor's statement from January 7, 2010 to the present, (2) a doctor's statement of the outlook for Plaintiff's return following his surgery, and (3) a doctor's statement/release prior to Plaintiff's return. The letter was returned to Defendant due to the fact that Plaintiff had moved. Defendant re-sent the letter to Plaintiff in April. Plaintiff received the letter after this second mailing.

On April 27, 2010, Plaintiff faxed the following documents to Defendant: (1) an Upper–Extremity HAND Questionnaire, which Plaintiff asked his doctor to prepare, and which indicated that Plaintiff could "interlace his fingers behind his head" and that he could "do push-ups on a regular basis," and (2) six pages of radiology and progress reports showing Plaintiff's medical condition as of January 22, 2010. These documents are the only documents Plaintiff sent to Defendant regarding his medical condition after returning from active duty in January of 2010. Plaintiff never asked his doctor for any additional documents, nor did he ask his doctor to prepare any documents in response to Defendant's letter. Plaintiff never called Defendant to confirm receipt of these documents or to ask if Defendant needed any additional documents from him.

Mr. Fields reviewed these documents and determined that they were "insufficient." Mr. Fields testified that Defendant did not have Plaintiff return to work because Plaintiff never submitted a release or any other documentation showing he was able to return to work following his wrist injury. Mr. Fields and Director of Distribution Rodney Adams testified that if Plaintiff had submitted medical documentation releasing him to perform the duties of a route sales driver position, Defendant would have had Plaintiff return to work.

In December of 2010, Defendant underwent a reduction in force from 213 to 181 employees due to the loss of its largest customer, Food Lion, and other business concerns. In particular, Defendant eliminated route sales driver positions at many of its locations, including at the Nashville Branch.

### B. Procedural History

Plaintiff initiated this suit for violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 et seq., on December 2, 2010. (Doc. No. 1.) Specifically, Plaintiff alleges that Defendant violated 38 U.S.C. §§ 4311, 4312, and 4313. (Id. ¶¶ 31–32.) It is undisputed that Plaintiff's claims are solely based on Defendant's failure to reemploy Plaintiff after his early return from his December 5, 2009 military leave and are unrelated to any acts that occurred prior to such leave. (Doc. No. 40 at 27.)

Defendant filed the pending Motion on November 18, 2011 (Doc. No. 26), along with a Memorandum in Support (Doc. No. 27), a Statement of Undisputed Material Facts (Doc. No. 28), and other supporting materials (Doc. Nos. 29–1 to 29–7). On December 22, 2011, Plaintiff filed a Response in Opposition (Doc. No. 37), along with a Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 40), his own Statement of Undisputed Material Facts (Doc. No. 38), and other supporting materials (Doc. No. 39). On January 20, 2012, Defendant filed a Reply in support of its Motion (Doc. No. 42), along with a Response to Plaintiff's Statement of Undisputed Material Facts (Doc. No. 43) and supporting materials (Doc. Nos. 44–1 to 44–8).

## II. Legal Standard

Summary judgment is rendered when "there is no genuine dispute as to any material fact and ... the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington–South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir.1996). The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 Fed. Appx. 328, 330–31 (6th Cir.2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed.R.Civ.P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington–South Elkhorn Water Dist.*, 93 F.3d at 233.

## III. Analysis

■■■ "Statutory protection of job security for armed services members has a long history, dating back to the Selective Training and Service Act of 1940." *Petty v. Metro. Gov't of Nashville–Davidson Cnty.*, 538 F.3d 431, 439 (6th Cir.2008). USERRA, passed by Congress in 1994, was enacted "to clarify, simplify and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions." *Gummo v. Vill. of Depew*, 75 F.3d 98, 105 (2d Cir.1996) (citations and quotations omitted). Due to these goals, USERRA "'must be broadly construed in favor of its military beneficiaries.'" *Petty*, 538 F.3d at 439 (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir.2006)). Relevant case law that predates USERRA "is properly considered as a guide to interpreting USERRA." *Id.*

### A. 38 U.S.C. § 4311 Claim

■■■ Defendant first moves for summary judgment on Plaintiff's claim under 38 U.S.C. § 4311. (Doc. No. 27 at 10.) Defendant argues that, because the provision only applies after a service member has

returned to reemployment, and because it is undisputed that Plaintiff does not allege any claims against Defendant for acts that occurred prior to his final military leave, after which he did not return to work for Defendant, Plaintiff's claim must fail. (Doc. No. 27 at 10.) Plaintiff has not responded to this argument. (*See* Doc. No. 37.)

The Sixth Circuit has stated that 38 U.S.C. § 4311[3] "applies after reemployment has occurred and 'prohibits discrimination with respect to any benefit of employment against persons who served in the armed services after they return from a deployment and are reemployed.'" *Petty,* 538 F.3d at 440 (quoting *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 930 (8th Cir. 2007)). Because Plaintiff has admitted that his claims are unrelated to any acts that occurred prior to his leave commencing December 5, 2009 (Doc. No. 40 at 27), Defendant's argument as to this issue is well-taken. Defendant's Motion as to Plaintiff's claims under 38 U.S.C. § 4311 is therefore **GRANTED.**

### B. *38 U.S.C. § 4312 Claim*

■ Next, Defendant argues that Plaintiff's claim under 38 U.S.C. § 4312 must fail because Plaintiff cannot show that he was qualified to perform the functions of a route sales driver since he did not provide the medical documentation and doctor's release requested by Defendant after his wrist surgery. (Doc. No. 27 at 12–13.)

Plaintiff responds that he has satisfied all of the statutory prerequisites under USERRA, thus entitling him to reemployment. (Doc. No. 37 at 14–15.) Plaintiff also asserts that the documentation he provided Defendant was sufficient for the purposes of USERRA, and that Defendant's "company policy" requiring certain documentation to be submitted "cannot trump federal law." (*Id.* at 16–17.)

Defendant has submitted a Reply, in which it asserts that the documentation it requested from Plaintiff was consistent with USERRA. (Doc. No. 42 at 6.) In support of this position, Defendant notes that Ms. Queen, representing the Department of Defense, recognized the need to provide "'a doctor's note spelling out [Plaintiff's] restrictions so that [Defendant] [could] properly accommodate his service connected disability'" in an email sent to Ms. Wesley. (*Id.* at 7 (quoting Doc. No. 42–1 at 2).) Defendant also argues that "an inquiry into a physical condition is appropriate where the employee's ability to physically perform the job is at issue," and contends that Sixth Circuit precedent supports this position. (*Id.* at 7–8.) Further, Defendant argues that the very terms of USERRA require an employee to be "qualified," and thus its request for medical documentation from Plaintiff was appropriate under the statute. (*Id.* at 8–9 (citing 38 U.S.C. § 4313(a)(3)(A)).) Lastly, Defendant takes the position that reemploying Plaintiff without a doctor's release could have resulted in further injury to Plaintiff, which "could have had an unintended consequence for Plaintiff" in that Defendant would have then been entitled to terminate Plaintiff "for cause," thereby eliminating Plaintiff's USERRA rights. (*Id.* at 12.)

38 U.S.C. § 4312 "sets forth the basic right of a returning veteran to be rehired

---

**3.** 38 U.S.C. § 4311(a) reads,

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reem-

> ployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

by his past employer and the basic prerequisites that the veteran must meet in order to enjoy that right." *Petty*, 538 F.3d at 440. The four prerequisites are:

First, he was required to notify his employer in advance of his departure that he would be leaving for military service. 38 U.S.C. § 4312(a)(1). Second, the cumulative length of such military service must be less than [five] years. 38 U.S.C. § 4312(a)(3). Third, upon his return, he was required to request reemployment from [his employer] within the time frame outlined in § 4312(e) and with the documentation specified by § 4312(f). Fourth, his separation from service must have been under "honorable conditions." 38 U.S.C. § 4304(2).

*Id.*

By its own terms, USERRA's requirements "supersede[ ] any ... policy, plan, [or] practice, ... that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b). The Sixth Circuit recently interpreted this provision to mean that USERRA's requirements supersede even routine "return-to-work procedures" that "are applicable to all individuals regardless of military service." *Petty*, 538 F.3d at 442.

Consequently, any efforts by Defendant to impose requirements that go beyond those outlined in USERRA—even if they were a general "company policy" and were not imposed on Plaintiff specifically—cannot serve as a condition on Plaintiff's reemployment under § 4312. The only issue with respect to Plaintiff's § 4312 right to reemployment, therefore, is whether Plaintiff has satisfied the four statutory prerequisites described above. Because the parties only dispute whether Plaintiff complied with USERRA's documentation

requirement, part of the third prerequisite, the Court will focus on that issue.

Pursuant to § 4312(f)(1), a returning veteran "who submits an application for reemployment ... shall provide to [his] employer (upon the request of such employer) documentation to establish that" the application is timely, that he has not exceeded five cumulative years of military service, and that his discharge from service was under honorable conditions. 20 C.F.R. § 1002.123(a) lists seven documents that satisfy the documentation requirements of § 4312, including a DD–214 form. The parties do not dispute that Plaintiff sent, and Defendant received, a DD–214 form.

All other issues raised by Defendant are beyond the scope of this inquiry. Thus, Defendant's arguments about Ms. Queen's statements or Plaintiff's qualifications are irrelevant to the issue of Plaintiff's rights under § 4312. Moreover, Defendant has mischaracterized Sixth Circuit law as to the relevance of a veteran's physical qualifications. It is true that the Sixth Circuit in *Petty* noted that the plaintiff's employer in that case did "not question [the plaintiff's] physical qualifications," but instead questioned "whether his conduct during his military service would disqualify him from returning to service in the police department." 538 F.3d at 441. However, such a point of clarification does not, in and of itself, support Defendant's position that it would be appropriate to inquire into a veteran's physical condition when "the employee's ability to physically perform the job is at issue" (Doc. No. 42 at 8), particularly in light of the clear language of § 4312 and the Sixth Circuit's fidelity to the straightforward requirements of the provision.

Furthermore, Defendant's argument that Plaintiff was, in effect, better off not being reemployed because he could have

risked further injury and/or termination for cause is misplaced. Plaintiff met the statutory requirements for reemployment pursuant to § 4312. The fact that Defendant retained the right to subsequently terminate Plaintiff for cause pursuant to 38 U.S.C. § 4316 can in no way justify Defendant's refusal to reemploy Plaintiff upon his compliance with USERRA's prerequisites to reemployment. *See Petty,* 538 F.3d at 441–42; *Francis,* 452 F.3d at 304 (" § 4312 only entitles a service person to immediate reemployment and does not prevent the employer from terminating him the next day or even later the same day.").

In short, Plaintiff has plainly satisfied the requirements under § 4312. Having done so, Plaintiff has "established his right to reemployment" under that provision. *Petty,* 538 F.3d at 441. As a consequence, Defendant's Motion is **DENIED** as to Plaintiff's claim under 38 U.S.C. § 4312.

### C.  38 U.S.C. § 4313 Claim

■ Defendant then argues that Plaintiff's claim that Defendant failed to provide reasonable accommodations fails because Plaintiff did not provide documentation to Defendant that would have allowed Defendant to make accommodations, and because Plaintiff never asked for an accommodation from Defendant. (Doc. No. 27 at 14.) Further, Defendant argues that it did, in fact, offer Plaintiff an accommodation in that it gave "him the opportunity to return to work if he would just provide documentation that he could perform the essential functions of his position or whether he had any restrictions, which Plaintiff again failed to do." (*Id.*) Defendant argues that Plaintiff's claim that Defendant violated USERRA because it did not find alternative positions for Plaintiff must fail for the same reasons, and because Plaintiff never asked to return to any position other than that of a route sales driver and that

position was the only open position at Defendant's Nashville Branch. (*Id.* at 15.)

In response, Plaintiff argues that Defendant "completely failed to either retrain or accommodate [Plaintiff's] service-connected disability," which it was required to do under USERRA. (Doc. No. 37 at 19.) Accordingly, Plaintiff argues that Defendant's Motion should be denied as to Plaintiff's claim pursuant to 38 U.S.C. § 4313. (*Id.* at 18.)

Defendant's Reply largely restates the arguments from its initial filing, emphasizing that Plaintiff did not provide the medical documentation requested by Defendant and the documents that he did provide were unhelpful because they were completed prior to his wrist surgery and were relevant to work done in the military, not work Plaintiff would perform as Defendant's employee. (Doc. No. 42 at 10–12.) Defendant further argues that Plaintiff's lack of communication with and responsiveness to Defendant is to blame for Defendant's inability to reemploy and accommodate Plaintiff, noting that Plaintiff "did not know if [Defendant] ever even received" the medical forms that he did send. (*Id.* at 12.)

Under USERRA, if a veteran is entitled to be reemployed pursuant to § 4312, then § 4313 "sets forth the position of employment to which the returning veteran must be rehired and requires that the veteran be 'promptly reemployed' in that position." *Petty,* 538 F.3d at 440. The position in which the employee must be reemployed is known as the escalator position, and the rationale for the escalator position is explained in 20 C.F.R. § 1002.191 as follows:

> The principle behind the escalator position is that, if not for the period of uniformed service, the employee could have been promoted (or, alternatively, demoted, transferred, or laid off) due to intervening events. The escalator principle requires that the employee be

reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service. Depending upon the specific circumstances, the employer may have the option, or be required, to reemploy the employee in a position other than the escalator position.

In terms of Plaintiff's reemployment, both parties focus their discussion on 38 U.S.C. § 4313(a)(3). Pursuant to that provision, when a returning veteran has served in the military for over ninety days, "has a disability incurred in, or aggravated during" his military service, and, despite "reasonable efforts by the employer to accommodate the disability," the veteran is unqualified to be employed in the position in which he would have been employed had his period of employment not been interrupted by the military service, then the employer must reemploy the veteran in an alternative position. 38 U.S.C. § 4313(a)(3). The position with the first priority in such a circumstance is "any other position which is equivalent in seniority, status, and pay, the duties of which the person is qualified to perform or would become qualified to perform with reasonable efforts by the employer." *Id.* § 4313(a)(3)(A). If such a position is not attainable, then the veteran must be reemployed "in a position which is the nearest approximation to" such an equivalent position "in terms of seniority, status, and pay consistent with the circumstances of such person's case." *Id.* § 4313(a)(3)(B).

In terms of the employer's "reasonable efforts," the relevant regulation specifies that an "employer is not required to reemploy the employee on his or her return from service if he or she cannot, after reasonable efforts by the employer, qualify for the appropriate reemployment position." 20 C.F.R. § 1002.226(a). Such "reasonable efforts must be made at no cost to the employee." *Id.* § 1002.198(b). "Qualified" is defined as having "the ability to perform the essential tasks of the position," a characterization that depends on several factors as specified in the regulations. *Id.* § 1002.198(a)(1)-(2). Whenever a veteran's qualifications are at issue, the defendant bears "the burden of proving that [the] returning veteran is not qualified under § 4313." *Petty*, 538 F.3d at 444.

Having found that Plaintiff had a right to reemployment with defendant under § 4312, Defendant had an obligation to reemploy Plaintiff in a position consistent with the dictates of § 4313. Because Plaintiff was not reemployed, it follows that Defendant necessarily failed to fulfill its obligations under § 4313. While Defendant attempts to cast doubt on Plaintiff's physical qualifications, such considerations cannot be taken into account before reemployment. Put differently, once Plaintiff has satisfied the prerequisites in § 4312—which the Court has already found Plaintiff to have done—then Plaintiff must be reemployed, and only then, when determining the particular position in which to reemploy Plaintiff, can Defendant consider Plaintiff's qualifications. Furthermore, even if Defendant had reemployed Plaintiff, there are numerous factual issues still in dispute. For example, whether or not Defendant's efforts in reemploying Plaintiff were "reasonable" would be a question for a factfinder, not a question of law that can be decided at the summary judgment stage.[4] *See Anderson,*

4. Complicating this issue is the fact that Defendant argues that its efforts to obtain medical documentation from Plaintiff would satisfy the "reasonable efforts" standard. However, as discussed above, *see supra* Section III(B), Defendant was legally prohibited from requesting this documentation under USERRA. It is difficult to see how such impermissible requests could be considered "reasonable ef-

477 U.S. at 255, 106 S.Ct. 2505. In short, summary judgment in Defendant's favor as to the § 4313 claim is unwarranted. Therefore, Defendant's Motion as to Plaintiff's claim under 38 U.S.C. § 4313 is **DENIED.**

### D. Defendant's Reduction in Force

■ Lastly, Defendant argues that it has an affirmative defense under USERRA: that Plaintiff would have been terminated due to Defendant's reduction in force. (Doc. No. 27 at 15–16.) Defendant argues that Plaintiff's "vacant position was eliminated as of December 2010" and that even if he had been re-hired, Plaintiff would have been terminated by August of 2011 [5] due to poor performance. (*Id.* at 16.) Defendant also asserts that if Plaintiff is to succeed on his claims, Plaintiff cannot recover damages after December of 2010 because Defendant "has proven that it experienced circumstances as of that date which made reemployment of Plaintiff impossible or unreasonable." (*Id.*)

Plaintiff responds that there remain genuine issues of material fact "as to whether [Defendant's] reduction in force would have affected [Plaintiff's] position." (Doc. No. 37 at 20.) Plaintiff first asserts that the evidence "shows" that Defendant hired Kevin Caperton to take over Plaintiff's delivery route, and that Mr. Caperton was still employed by Defendant as of October of 2011, which Plaintiff argues contradicts Defendant's arguments about a reduction in force eliminating Plaintiff's position. (*Id.*) Moreover, Plaintiff argues that "the law is clear that reinstatement cannot be delayed indefinitely or denied because a hiring freeze is in effect, or because somebody else was hired to fill the service member's position." (*Id.* at 21.) Plaintiff also asserts that there are genuine issues of material fact as to whether Plaintiff would have been terminated by August of 2011 due to his alleged poor performance, in light of evidence showing Plaintiff's good job performance with Defendant. (*Id.* at 21–22.) By contrast, Plaintiff argues that the evidence Defendant has used to support its argument about Plaintiff's inevitable termination includes a "self-serving declaration" and "Mr. Adams's own subjective belief that [Plaintiff] was a substandard employee." (*Id.* at 23.) As such, Plaintiff argues that "only a jury can make the credibility determinations necessary to resolve the outstanding genuine issue of material fact as to whether [Defendant's] reduction in force would have applied to [Plaintiff]." (*Id.*)

Defendant has filed a Reply in which it, again, largely re-states its arguments about its reduction in force, pointing to various depositions and declarations to support its assertion that Plaintiff's position would have been eliminated in 2011. (Doc. No. 42 at 14–16.) In particular, Defendant asserts that Mr. Caperton was not hired to replace Plaintiff, and that Plaintiff's performance evaluation from June of

---

forts" under the statute. *See Petty*, 538 F.3d at 443 ("At the point at which Petty was entitled to reemployment under §§ 4312 and 4313, Metro had no basis on which to question his qualifications. Petty had satisfied the only prerequisites to § 4313—those specified in § 4312—and Metro's attempt to impose additional prerequisites through its return-to-work process was, as we have already explained, wholly impermissible.") Moreover, the practical effect of Defendant's argument is to shift the burden to Plaintiff to provide documentation demonstrating that he is qualified. Defendant, however, bears the burden of demonstrating Plaintiff's lack of qualifications. *Id.* at 444.

**5.** Although Defendant's memorandum lists August of 2010 in this part of its discussion (Doc. No. 27 at 16), Defendant has elsewhere given August of 2011 as the date by which Plaintiff would have allegedly been terminated (*id.* at 8). Therefore, the Court believes August of 2011 to be the correct date.

2008 does not support the conclusion that Plaintiff was a good employee. (*Id.* at 15.)

Pursuant to 38 U.S.C. § 4312(d)(1)(A), an employer need not reemploy a veteran if "the employer's circumstances have so changed as to make such reemployment impossible or unreasonable." "'The purpose of the exemption is to allow employers who have eliminated a reservist's position or otherwise drastically changed their business to avoid rehiring someone for a job that no longer exists.'" *United States v. Nevada,* 817 F.Supp.2d 1230, 1242 (D.Nev.2011) (quoting *Cole v. Swint,* 961 F.2d 58, 60 (5th Cir.1992)). A "'reduction in force that would have included the employee'" constitutes a changed circumstance under USERRA. *Id.* (quoting 20 C.F.R. § 1002.139(a)). However, an employer cannot "'refuse to reemploy the employee on the basis that another employee was hired to fill the reemployment position during the employee's absence, even if reemployment might require the termination of that replacement employee.'" *Id.* (quoting 20 C.F.R. § 1002.139(a)). The employer bears the burden of proving this defense, which "must be construed narrowly against an employer seeking to avoid USERRA liability." *Id.*

Defendant has asserted that a reduction in force it underwent subsequent to Plaintiff's military leave in late 2009 relieves it of its obligation to rehire Plaintiff. Defendant also argues that, had Plaintiff been rehired, Plaintiff would have been fired anyway due to allegedly poor job performance. Summary judgment in Defendant's favor is not warranted, however. Both Defendant and Plaintiff point to testimony of various witnesses to support their respective arguments on this issue. As the Supreme Court has recognized, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury func-

tions, not those of a judge ... on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. As such, resolution of Defendant's affirmative defense must rest with the jury, and cannot be decided on a motion for summary judgment. Defendant's Motion as to its affirmative defense of changed circumstances is, therefore, **DENIED.**

## IV. CONCLUSION

For the reasons given above, Defendant's Motion is **GRANTED in part** and **DENIED in part.** Defendant's Motion is **GRANTED** with respect to Plaintiff's claim under 38 U.S.C. § 4311, but **DENIED** with respect to Plaintiff's claims under 38 U.S.C. §§ 4312 and 4313, as well as Defendant's affirmative defense pursuant to 38 U.S.C. § 4312(d)(1)(A).

It is so ORDERED.