**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1191

WILBERT FINLEY,

Plaintiff – Appellant,

v.

KRAFT HEINZ INC.,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Timothy M. Cain, Chief District Judge.  (8:22-cv-00426-TMC)

Argued:  May 7, 2025                                 Decided:  July 25, 2025

Before THACKER and HARRIS, Circuit Judges, and Thomas T. CULLEN, United States District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Thacker and Judge Cullen joined.

**ARGUED:**  Thad M. Guyer, T.M. GUYER & FRIENDS, PC, Medford, Oregon, for Appellant.  Katelynn Mary Williams, FOLEY & LARDNER LLP, Madison, Wisconsin, for Appellee.  **ON BRIEF:**  Stephani L. Ayers, T.M. GUYER & FRIENDS, PC, Medford, Oregon, for Appellant.  Daniel A. Kaplan, FOLEY & LARDNER LLP, Madison, Wisconsin, for Appellee.

PAMELA HARRIS, Circuit Judge:

Wilbert Finley alleges that his former employer, Kraft Heinz, violated the Food Safety Modernization Act by firing him because he raised food safety concerns. The district court granted summary judgment to Kraft Heinz, holding that Finley could not show that his safety complaints were a "contributing factor" in his dismissal. We disagree, and thus vacate the district court's judgment.

## I.

### A.

This appeal centers on Kraft Heinz's termination of Wilbert Finley from his job as a production manager at Kraft Heinz's Newberry, South Carolina plant, where Finley was responsible for bacon and other packaged deli meats. According to Finley, Kraft Heinz fired him because he repeatedly raised concerns about food safety. But according to Kraft Heinz, Finley was terminated for dishonesty during a human resources ("HR") investigation into the botched firing of another employee. We begin with some factual background on Finley's history of complaints and the HR investigation in question. We turn then to the magistrate judge's report and recommendation and the district court's grant of summary judgment to Kraft Heinz.

#### 1.

It is undisputed that Finley's job responsibilities included oversight of product

quality and food safety.[1]  Starting in the fall of 2019 and continuing through the spring of 2020, Finley's work became contentious as Finley began pausing production to address his safety concerns.

In particular, Finley was worried about "leakers" – improperly sealed bacon packages that would allow pathogens to enter the meat – and about bone fragments big enough to be dangerous.  He regularly raised these concerns to his supervisors and to HR, asserting that inadequacies in employee training and staffing shortages were resulting in both leakers and bone fragments.  In weekly meetings, Finley reported improper use of x-ray machines meant to detect bone, and shared with his supervisors that he was finding too much bone in the bacon.  But according to Finley, his supervisors told him to continue processing the product and not to discard it.  On the occasions when Finley stopped production to address the risks of adulterated meat, he was criticized by his direct supervisor and the plant manager and told not to shut down the lines.[2]  Frustrated, Finley

---

[1] Where the facts are disputed, we generally recount them in the light most favorable to Finley, the nonmovant, and draw all reasonable inferences from the record in his favor. *Ray v. Roane*, 93 F.4th 651, 655 (4th Cir. 2024).  In some cases, we will flag particularly notable disputes.

[2] The parties dispute whether Finley was warned by co-workers and supervisors that he might be fired if he did not ease up on his complaints.  To the extent Finley is relying only on general rumors, those statements would be excluded as hearsay that could not be properly substantiated at trial.  But at least one co-worker attested that she heard such comments in conversations with supervisors and specific employees, which could be presented as non-hearsay at trial.  J.A. 505; *see* Fed. R. Evid. 801(d)(2)(D) (statements of defendant's employee on a matter within the scope of the employment relationship offered against the defendant are not hearsay).

3

began running back and forth from the line to management's offices with packages of the bacon, opening them up and showing the bones in the meat.

The rate of complaints picked up in early 2020. On January 25, February 17, February 18, and March 2, Finley shared data documenting meat quality issues with his supervisors. On March 12, Finley raised concerns about insufficient staffing, including the removal of a specialized food-safety employee. Twelve days later, on March 24, 2020, Finley was suspended pending review, and two days after that, on March 26, he was terminated.

2.

Notwithstanding the close proximity between Finley's complaints and his termination, Kraft Heinz insists Finley was fired because of an "intervening event": an HR investigation on March 24, 2020, involving the firing – more accurately, the non-firing – of a different employee, during which, Kraft Heinz says, Finley made inconsistent statements.

Two weeks earlier, on March 12, HR instructed one of Finley's subordinates, Bobby Clark, to terminate four of the employees he supervised. The termination of three of them proceeded without incident: After having Finley add his signature to the relevant forms, Clark walked the employees out of the plant and deactivated their badges. But one of the employees, Yolanda Gaines, was not at work on March 12. So while it is undisputed that Finley and Clark both signed Gaines's termination form and that the form was turned into HR on March 12, it appears that nobody actually fired Gaines. Instead, Gaines, upon her

4

return, continued to work until March 24, when HR realized she was still there. Hence, the investigation into the non-firing of Gaines.

An HR representative began by speaking with Clark, Gaines's direct supervisor. It was Clark who added Finley to the conversation, calling him to join the discussion with HR. What was said during that meeting is disputed. Most important here, the HR representative claims that Finley said something untrue: that he walked Gaines out of the building on March 12 and deactivated her badge, as well as turning in her termination form to HR. Based on that alleged misrepresentation – "saying he walked the employee out but didn't," J.A. 383 – an HR manager told Finley's supervisor that it appeared Finley had been dishonest, and suggested further investigation.

Another HR employee then had a second conversation with Finley. Here, the parties agree that Finley made clear he had *not* walked Gaines out of the building, and he *denied* having said otherwise earlier in the day. As for the submission of the forms, Finley said he had no specific recollection. But "if Mr. Clark had turned in paperwork to [him] to take for HR," Finley surmised, "then [he] would have transmitted it to HR." J.A. 563.

Finally, there was a third conversation, with the HR employee and Finley now joined by Finley's supervisor. This time, Finley recorded the conversation, unbeknownst to the others. Finley's supervisor told Finley that according to HR, on March 12, Finley had both turned in Gaines's termination form and said, to HR, that he had walked Gaines out and deactivated her badge. Finley again disclaimed having walked Gaines out or taken her badge on March 12, pointing out that this was Clark's responsibility, not his, and that he had never deactivated a badge. And critically, he again denied having ever said

5

otherwise, on March 12 or in his first meeting that day.  As to the termination form, Finley repeatedly said that he could not remember whether he or Clark turned in the paperwork on March 12.  "I turn in a lot of forms and sign a lot of forms, but, like I said, I don't know." J.A. 578–79.

Kraft Heinz terminated Finley two days later, on March 26, for "dishonesty" and "lack of integrity" during the March 24 investigation.  J.A. 370.  Specifically, according to an email written by the HR manager who had weighed in early in the investigation, Finley was fired because he gave "multiple accounts" of what happened with Gaines, "could not give a consistent account," and "failed to take any accountability for the situation nor his lack of consistent story."  J.A. 633.  Kraft Heinz cited its handbook, under which "[d]ishonesty, including falsification or failing to correctly and accurately record and/or document any company or processing record" can lead to termination on a first offense. J.A. 378.  The HR manager later attested that in the three years before Finley's termination, Kraft Heinz had terminated seven managers for dishonesty and 93 hourly employees for falsification.

**B.**

After exhausting his claim with the Occupational Safety and Health Administration, Finley filed this suit in federal district court.  In his complaint, Finley alleged that his termination was unlawful retaliation, in violation of the Food Safety Modernization Act

6

("FSMA").[3]  The district court, adopting the report and recommendation of a magistrate judge, granted summary judgment to Kraft Heinz.

1.

The magistrate judge evaluating Kraft Heinz's motion for summary judgment concluded that Finley was unable to establish a prima facie case of "contributing factor" causation as is required for an FSMA claim.  *Finley v. Kraft Heinz Food Co.*, No. 8:22-cv-426-TMC-KFM, 2023 WL 9470613, at *7 (D.S.C. Jul. 13, 2023).  The judge and parties agreed that the FSMA requires a plaintiff to show (1) that he engaged in protected activity, (2) that he experienced an adverse employment action, and (3) that his protected activity was a contributing factor in the adverse employment action.  *Id.* at *6.  On element one, the judge assumed without deciding that Finley's complaints would constitute protected activity under the FSMA.  *Id.* at *7.  On element two, Kraft Heinz did not dispute that Finley's termination was an adverse action.

Focusing on the third, "contributing factor" causation element, the magistrate judge acknowledged the "undoubtedly close temporal proximity" between Finley's food safety complaints in February and his termination in March.  *Id.*  But, the judge explained, the causal inference normally raised by such temporal proximity was "severed" here by a "legitimate intervening event" – Finley's conduct during the March 24 investigation of Gaines's termination.  *Id.* (quoting *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348

---

[3] Finley also pled one count of wrongful discharge in violation of South Carolina law.  The district court granted Kraft Heinz's motion to dismiss that count, and Finley does not appeal that dismissal.

7

(4th Cir. 2014)).  The judge recounted the investigation and concluded that there was "evidence in the record supporting the defendant's assertion that it terminated the plaintiff's employment based on dishonesty." *Id.* at *8.  He rejected Finley's arguments that an inference of retaliation could be drawn from other record evidence, including a shift in the stated rationale for his firing and Kraft Heinz's failure to take any action at all against Clark.  And the magistrate judge held that "[f]or the same reasons," Kraft Heinz had shown by clear and convincing evidence that "it would have terminated [Finley's] employment in the absence of his complaints," *id.* at *8 n.4, meeting the burden that would have shifted to Kraft Heinz had Finley made out his prima facie case.

## 2.

Rejecting each of Finley's objections, the district court agreed with the magistrate judge and granted summary judgment to Kraft Heinz.  *Finley v. Kraft Heinz, Inc.*, No. 8:22-cv-426-TMC, 2024 WL 340790, at *10 (D.S.C. Jan. 30, 2024).  The court first considered Finley's objection that the magistrate judge had erred in treating his protected activity as ending in February 2020 when in fact his complaints had continued into March.  The court recognized that Finley's protected activity on March 12, when he complained about the removal of a food-safety specialist, served as additional evidence of temporal proximity.  But that would make no difference here, the district court held, because it would not affect the magistrate judge's analysis of the "intervening event" on March 24.  *Id.* at *7.

The district court also rejected Finley's objection that the magistrate judge improperly disregarded his "comparator" evidence – the failure of Kraft Heinz to take disciplinary action against Clark for his role in the Gaines episode, despite the fact that

8

Clark and not Finley was Gaines's immediate supervisor and directly responsible for her firing. Clark was not a valid comparator, the court held, because Kraft Heinz believed that Finley, but not Clark, had "lied" during the investigation. *Id.* at *8. And Finley's argument that in fact, Clark *had* been "generally dishonest" about the Gaines episode, the court concluded, would require it to "speculate" about the evidence. *Id.*

Finally, the court disagreed with Finley that there was evidence from which it could be inferred that Kraft Heinz's investigation was pretextual – that Kraft Heinz used the investigation as an excuse to fire Finley for his protected activity. No reasonable trier of fact, the court held, could find that Kraft Heinz's investigation was so "obviously inadequate" that it established pretext. *Id.* (quoting *Powell v. Biscuitville, Inc.*, 858 F. App'x 631, 633 (4th Cir. 2021)). Nor were changes in the explanation for Finley's firing relevant to the pretext inquiry, the court concluded, because however framed, "[t]hese explanations clearly refer to dishonesty" and further "pars[ing of] the language" was unreasonable. *Id.* at *10.

The district court thus adopted the magistrate judge's report and recommendation and granted summary judgment to Kraft Heinz. Finley timely appealed.

## II.

We "review a district court's award of summary judgment de novo, applying the same standards as those governing the district court's review of the record." *Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 170–71 (4th Cir. 2013). The district court

9

reviews a magistrate judge's report and recommendation de novo on all portions on which one or more party filed objections. 28 U.S.C. § 636(b)(1).

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). In considering that question, we review the record in the light most favorable to the non-movant – here, Finley – and draw all reasonable inferences in his favor. *Ray v. Roane*, 93 F.4th 651, 655 (4th Cir. 2024).

**A.**

We begin by clarifying a few threshold issues. First, all agree that the FSMA, which protects employees whose work involves the manufacture or distribution of food, instructs courts to review retaliation claims under a "contributing factor" standard commonly used in whistleblower statutes.[4] As the plaintiff, Finley bears the initial burden to demonstrate that he engaged in whistleblower activity protected by the FSMA[5] and that this protected

---

[4] The standard was first utilized in the Wendall H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121(b)(2)(B), so it is often referred to as the "AIR-21" standard. Although our court lacks precedent applying the FSMA, we are guided by our precedent applying other AIR-21 statutes, including the Sarbanes Oxley Act, the Surface Transportation Assistance Act, and the Federal Railroad Safety Act.

[5] The FSMA protects food-industry employees from being terminated or otherwise discriminated against because the employee (1) provided information to the employer, federal government, or state attorney general on a violation, or what the employee reasonably believes to be a violation, of the FSMA; (2) testified about such violation; (3) participated in a proceeding about such violation; or (4) objected to or refused to participate in an action the employee reasonably believed to be a violation of the FSMA. 21 U.S.C. § 399d(a)(1)–(4).

activity "was a contributing factor in the unfavorable personnel action alleged." 21 U.S.C. § 399d(2)(C)(iii). If he does so, then the burden shifts to the employer to demonstrate "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that behavior." *Id.* § 399d(2)(C)(iv).

Although the magistrate judge correctly described this framework, the district court erroneously referred not to the FSMA's "contributing factor" standard but instead to the familiar but-for causation framework for analyzing retaliation under statutes like Title VII and the ADEA. *See Finley*, 2024 WL 340790, at *4–5. This is a meaningful difference; as the Supreme Court has explained, the contributing-factor standard is more generous to employees and "not as protective of employers" than causation standards under other statutes. *Murray v. UBS Sec., LLC*, 601 U.S. 23, 39 (2024). "That is by design. Congress has employed the contributing-factor framework in contexts where the health, safety, or well-being of the public may well depend on whistleblowers feeling empowered to come forward." *Id.* It is not clear that the district court's reference to but-for causation affected its substantive analysis of Finley's objections. Regardless, we analyze Finley's claims under the contributing-factor standard set forth in the FSMA.

Second, though Finley argues that the Supreme Court's recent decision in *Murray* "abrogates" the analyses of the magistrate judge and district court, we disagree. In *Murray*, the Supreme Court rejected a reading of the "contributing factor" causation standard that would require a plaintiff to prove not only that his protected activity was a contributing factor in the contested personnel action but *also* that his employer acted with retaliatory intent or animus. "An animus-like 'retaliatory intent' requirement," the Supreme Court

11

held, is "simply absent" from the relevant statutory text. *Id.* at 34. That is an important clarification, but it has nothing to do with this case. Kraft Heinz is not defending on the ground that it terminated Finley because of his complaints but without animus and only because, say, it believed Finley "might be happier" in a different job. *Id.* at 35. Kraft Heinz never argued that Finley was required to show retaliatory intent but had failed to do so, and neither the magistrate judge nor the district court alluded to any such requirement. So, *Murray*'s holding has no bearing on this case.

**B.**

Like the magistrate judge and district court, we focus on the causation element of Finley's case.[6] To show that his protected activity was a "contributing factor" to his termination, Finley must establish – by a preponderance of the evidence, in making his prima facie case – that his activities "tend[ed] to affect in any way" Kraft Heinz's decision to terminate him. *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014) (citation omitted). "This element is broad and forgiving," *id.* (quotation marks and citation omitted), and Finley "need not show that the activities were a primary or even a significant cause of his termination," *id.* So long as his complaints "affect[ed] his termination in at

---

[6] Kraft Heinz also argues that Finley did not engage in FSMA protected activity. Both the magistrate judge and the district court assumed without deciding that Finley's complaints and warnings constituted protected activity. Although it is within our discretion to affirm on any ground supported by the record, we decline to address this issue in the first instance. Instead, we leave it to the district court to reassess that assumption on remand. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 515 (4th Cir. 2015) ("The district court is in a better position to consider the parties' arguments in the first instance, which can be presented at length rather than being discussed in appellate briefs centered on the issues the district court did decide.").

least some way," *id.*, he has made the necessary showing. At that point, the burden shifts to Kraft Heinz, which may nevertheless prevail if it can establish, by clear and convincing evidence, that it would have taken the same action and fired Finley even "in the absence of [his] protected activity." *Id.* at 345.

In the magistrate judge's view, adopted by the district court, Finley could not show contributing-factor causation because of the "intervention" of the March 24 investigation, which severed any causal connection between Finley's prior complaints and his firing on March 26. *Finley*, 2024 WL 340790, at *5. And for the same reason, Kraft Heinz had satisfied its burden on rebuttal: In their view, the record established that Finley's "dishonesty" during the March 24 investigation was sufficiently troubling to Kraft Heinz that it would have fired him even if he had never raised concerns about food safety. *Id.* at *6 & n.3.

We agree that given Kraft Heinz's defense here, these two inquiries – whether the "intervening" March 24 investigation foreclosed Finley's causation showing and whether it established Kraft Heinz's "same action" defense – are closely related and intertwined. At bottom, Kraft Heinz seeks summary judgment on the ground that it can show, as a matter of law, that Finley's protected activity had no effect on his termination because Finley's failure to give a consistent account of his actions on March 24 was a "legitimate intervening event" that fully explains why he was fired – and why would have been fired regardless of any prior protected activity. Contrary to the view of the magistrate judge and district court, we do not think that Kraft Heinz has made that showing.

13

1.

In the usual case, a showing of close temporal proximity alone is sufficient to demonstrate causation. *Barbour v. Garland*, 105 F.4th 579, 593 (4th Cir. 2024) ("[A] plaintiff may demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or by a combination of the two." (citation omitted)). As our court has explained with respect to the federal whistleblower statute, when an adverse action is taken shortly after protected activity by someone aware of that activity, a reasonable jury may infer that the protected activity was a contributing factor to the action. *Mikhaylov v. Dep't of Homeland Sec.*, 62 F.4th 862, 868 (4th Cir. 2023).

Finley raised concerns about food safety in the late summer and fall of 2019 and into the winter of 2020. The frequency of his reports escalated in February 2020 and continued in March 2020. Indeed, although the magistrate judge stopped the timeline of complaints in February, the record shows Finley voicing concerns to supervisors and to HR on March 2, March 9, March 12, and March 19. Ordinarily, the extremely close temporal proximity between Finley's complaints and his termination on March 26 would be sufficient, by itself, to support an inference of contributing-factor causation.

Here, of course, Kraft Heinz argues that the events of March 24 constituted a "legitimate intervening event," *Feldman*, 752 F.3d at 349, and therefore severed any causal link between Finley's prior protected activity and his subsequent firing two days later. We disagree. The March 24 investigation, like any intervening event, must be considered in the causation analysis. But an "intervening event" is not a talisman that makes all other

14

evidence of causation disappear, establishing conclusively that there can be no connection between protected activity and an adverse action. The events of March 24 should be considered not in isolation, but in conjunction with Finley's evidence of contributing-factor causation.

In *Feldman*, on which the magistrate judge primarily relied for his intervening event analysis, we held that the plaintiff in a whistleblower case had failed to satisfy even the "rather light burden" of showing contributing-factor causation. 752 F.3d at 348. That was so for two reasons: first, a conceded "complete absence of temporal proximity" between protected activity and adverse action; and second, "a legitimate intervening event further undermining a finding that [the plaintiff's] long-past protected activities played any role in [his] termination." *Id.* at 348–49. So, in that case, we found that a "legitimate intervening event, coupled with the passage of a significant amount of time after [the] alleged protected activities, sever[ed] the causal connection." *Id.* at 349.

*Feldman*'s reasoning – that the causal inference from temporal proximity "*may* be severed by the passage of a significant amount of time, or by some legitimate intervening event," *id.* at 348 (emphasis added) (citation omitted) – does not mean that such an event will always operate to "sever" any causal link between earlier protected activity and a subsequent adverse action. An intervening event may "undermin[e]," *id.* at 349, the strength of an inference that otherwise would arise from temporal proximity. But the question at summary judgment remains the same: In light of all the evidence, including the intervening event, could a reasonable jury conclude that Finley's protected activity tended to affect his termination? *See Genberg v. Porter*, 882 F.3d 1249, 1258–59 (10th

15

Cir. 2018) (rejecting defense that firing was due to an intervening investigation when evidence suggested investigation was instigated as a response to the protected activity); *Ameristar Airways, Inc. v. Admin. Rev. Bd.*, 650 F.3d 562, 569 (5th Cir. 2011) (intervening performance critiques bolstered inference of causation rather than defeating it because suspicious timing suggested pretext).

Here, the district court and magistrate judge failed to properly conduct that inquiry. Instead of evaluating the record as a whole to determine whether a reasonable jury could find in *Finley's* favor, the district court and magistrate judge evaluated whether there was evidence in the record to support *Kraft Heinz's* claim that it terminated Finley because of dishonesty during the March 24 investigation. *See Finley*, 2023 WL 9470613, at *8. But as Finley correctly objects, the existence of evidence in the record to support Kraft Heinz's position does not negate the existence of evidence to support his own. The district court and magistrate judge were still required to consider all the evidence – the evidence supporting Finley as well as the evidence supporting Kraft Heinz – to determine whether a reasonable jury could side with Finley.

2.

When we undertake that inquiry, we conclude that this record gives rise to genuine issues of material fact for a jury. We take the evidence as a whole, and view it in the light most favorable to Finley, drawing all reasonable inferences in his favor. *See Ray*, 93 F.4th at 655. So viewed, we think the record would allow a reasonable jury to determine that Finley's food safety complaints contributed to Kraft Heinz's decision to fire him, and that Kraft Heinz may not have made that decision if not for his food safety complaints.

16

First, a reasonable jury could give weight to the very close temporal proximity between Finley's complaints, the investigation into Finley's conduct, and Finley's firing. As explained above, an intervening event does not automatically dispel any inference arising from temporal proximity. A jury considering all the evidence could find that the March 24 investigation weakened or even fully "severed" the inference. But it also could find that the fact that Finley was deemed "dishonest" shortly after he increased the frequency of his objections to Kraft Heinz's food safety procedures in February and March weighs in Finley's favor as part of the totality of the evidence.

Second, there is the question of comparators. Finley argues that he was disciplined more severely than others involved in the Gaines non-firing, allowing a reasonable jury to infer that Kraft Heinz singled him out because of his prior safety complaints. *See generally Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (discussing use of comparator evidence to prove discrimination). In particular, Finley points to Clark: It is undisputed that Clark was Gaines's direct supervisor and the person primarily in charge of her termination process, that Clark had not previously raised food safety complaints, and that Clark was not disciplined at all for his part in the botched Gaines firing. According to Finley, a jury could reasonably infer that Kraft Heinz's decision to impose the most severe disciplinary sanction on him and no sanction on Clark was affected in some part by Finley's prior complaints.

We agree. The district court held that Clark was not a valid comparator, adopting Kraft Heinz's view that Clark, unlike Finley, had not been dishonest during the Gaines investigation. *Finley*, 2024 WL 340790, at *8. But that is a genuinely disputed question

17

of fact. Most critically, Kraft Heinz accepted at face value Clark's claim that because he was scheduled to be away on March 13 – the day after Gaines originally was to have been fired – he handed off responsibility for the firing to Finley, telling him that if Gaines showed up at work on March 13, Finley would have to walk her out of the building. But Finley has consistently denied that account. And he can point for support to the fact – acknowledged by Clark – that Clark cannot assign tasks to Finley, his boss, and to testimony from another plant supervisor that he heard Clark tell Finley that *Clark* would take care of firing Gaines when she returned. *Finley*, 2023 WL 9470613, at *5. The district court believed that sorting through this dispute would require it to "speculate" about what really happened. *Finley*, 2024 WL 340790, at *8. That is correct – and precisely why whether Clark is a valid comparator cannot be determined, on this record, as a matter of law. *See Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 224–25 & n.1 (4th Cir. 2019).[7]

Third, a jury could have questions about what Kraft Heinz really thought of Finley's behavior on March 24 and the consistency of its rationales for targeting and then firing him. As the district court saw it, Kraft Heinz believed Finley "lied" during the investigation and fired him for that reason. *Finley*, 2024 WL 340790, at *8. And that is indeed how Kraft Heinz, or at least an HR manager, originally characterized the problem with Finley's conduct: Finley had told an outright lie during his first meeting, "saying he walked the employee out but didn't," which sounded like "dishonesty." J.A. 383. But there is

---

[7] The district court also dismissed Finley's argument regarding Clark's dishonesty as untimely raised. *Finley*, 2024 WL 340790, at *8. We disagree. Finley raised allegations of Clark's dishonesty in his initial opposition to the motion for summary judgment.

18

deposition testimony from another HR employee saying that Kraft Heinz never concluded Finley lied, much less intentionally. Instead, internal records say Kraft Heinz found a "[l]ack of integrity," J.A. 635, in Finley's purportedly inconsistent answers and failure to recall who sent Gaines's form to HR.

The magistrate judge thought this was just a matter of semantics, and it is indeed a subtle distinction. But for a jury charged with determining the credibility of Kraft Heinz's position that it would have fired Finley for his March 24 conduct regardless of his food safety complaints, the gravity of that conduct – the difference between an intentional lie and an alleged inconsistency over the course of a day of meetings – could very well make a difference.[8] Or, of course, a jury might credit Finley and conclude that there was no inconsistency at all: Although Finley did not remember who turned in Gaines's termination form, he stood firm that he had not walked Gaines out, deactivated her badge, or told anyone that he had done so.

At summary judgment, of course, it is not the court's role to weigh this evidence or make credibility determinations in favor of either party, and we express no view on the ultimate merits of this dispute. We hold only that a reasonable jury could infer from the

---

[8] For related reasons, Kraft Heinz's declaration that it had recently terminated other employees at the Newberry plant for "dishonesty" is of limited probative value. As Finley argues, the declaration provides no specifics as to the gravity of the conduct in any of those cases – which could, for instance, have involved intentional lying as to a critical safety issue, rather than a failure to reconstruct a full and consistent account of an HR termination process gone awry. Charged with viewing the record in the light most favorable to Finley, we cannot just assume that the other "dishonesty" cases cited by Kraft Heinz are similar to Finley's.

19

record, considered as a whole, that something more than Finley's alleged "dishonesty" on March 24 contributed to his firing by Kraft Heinz,[9] and that Finley's increasingly urgent food safety complaints – culminating immediately before his termination – "affect[ed] his termination in at least some way." *Feldman*, 752 F.3d at 348. And for much the same reason, a jury could also doubt Kraft Heinz's position that it would have taken the "same action" – firing Finley, while leaving Clark undisciplined – even if Finley had never voiced a concern about food safety. Under those circumstances, the district court erred in awarding summary judgment to Kraft Heinz.

## III.

For the foregoing reasons, we vacate the district court's grant of summary judgment to Kraft Heinz and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[9] Kraft Heinz argues that Finley's deposition testimony is inconsistent with such a conclusion, because Finley refused to say that his supervisor and an HR employee lied when they said he was terminated for dishonesty. That statement does not carry the weight Kraft Heinz thinks it does. We do not take either party to doubt that the stated rationale for Finley's termination was dishonesty. The question is whether a reasonable jury could conclude that how Kraft Heinz conducted the investigation, arrived at that conclusion, and disciplined Finley for that alleged dishonesty was in some way affected by his earlier protected activity.