**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1648**

_____

DR. MUTHONI IMUNGI,

        Plaintiff – Appellant,

   v.

VIRGINIA COMMONWEALTH UNIVERSITY,

        Defendant – Appellee.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:22-cv-00438-HEH)

_____

Argued:  May 9, 2025                    Decided:  September 10, 2025

_____

Before WYNN, HARRIS, and BENJAMIN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Benjamin joined.  Judge Wynn wrote a dissenting opinion.

_____

**ARGUED:**  Briana Leah Scholar, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant.  William Ryan Waddell, OGLETREE DEAKINS, Richmond, Virginia, for Appellee. **ON BRIEF:**  Anita Mazumdar Chambers, Robert Scott Oswald, EMPLOYMENT LAW GROUP, PC, Washington, D.C., for Appellant.  Jimmy F. Robinson, Jr., OGLETREE DEAKINS, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

The plaintiff in this case, Dr. Muthoni Imungi, was a professor at Virginia Commonwealth University's School of Social Work. In June 2020, she was informed that her supplemental administrative appointment as Director of Field Education would not be renewed. Dr. Imungi alleges that this nonrenewal was unlawful retaliation for her complaints of race discrimination under Title VII.

The district court granted summary judgment to the university, holding that Dr. Imungi could not show that her nonrenewal was causally linked to her complaints and that she had failed to rebut the university's proffered legitimate and non-retaliatory reasons for nonrenewal. We agree that Dr. Imungi has not identified evidence of pretext that could refute the university's non-retaliatory rationales for her nonrenewal, and therefore affirm the judgment of the district court.

## I.

Dr. Imungi, a Black woman born and raised in Kenya, was hired by Virginia Commonwealth University ("VCU") in 2016. Dr. Imungi's faculty appointment was as a non-tenured Assistant Professor in Teaching at the School of Social Work. She also was appointed to a one-year term as Director of Field Education ("Director"), an administrative appointment that came with a $10,000 salary supplement. Because the Director served to "support the vision and direction of the Dean" of the School of Social Work, Dr. Imungi's role as Director shifted with changes in the School's leadership and, most relevant here, with the 2018 appointment of a new Dean, Dr. Elizabeth Angell. J.A. 414.

2

In June 2020, Dean Angell declined to renew Dr. Imungi's supplemental appointment as Director of Field Education when it expired that month, although Dr. Imungi remained a professor at the School. Dr. Imungi alleges that her nonrenewal was the result of complaints of race discrimination she had lodged three and four months earlier, while VCU points to what it says were Dr. Imungi's long-running performance problems in the Director role and her failure to share Dean Angell's vision for the Office of Field Education and its Director. For context, we first detail the events leading up to Dr. Imungi's nonrenewal, and then summarize the district court decision awarding summary judgment to VCU.

## A.

During Dr. Imungi's first two years as Director (academic years 2016–2017 and 2017–2018), she was supervised by an Interim Dean appointed shortly after she was hired. The Interim Dean gave Dr. Imungi positive performance reviews, twice renewed her as Director, and promoted her to Associate Professor. But Dr. Imungi admits that by the spring of 2018, at least four of her subordinates at the Office of Field Education had complained to the Interim Dean about her supervision.

Dean Angell was hired in July 2018. It is undisputed that shortly after she was hired and solicited feedback from faculty and staff, Dean Angell told Dr. Imungi that she had received negative comments about Dr. Imungi's job performance. According to Dean Angell, complaints from Field Education staff and faculty covered a wide range of concerns: about a lack of "effective leadership" and creation of a "toxic work environment," J.A. 195, 205, about Dr. Imungi's "micromanagement and inflexibility as a

3

supervisor," J.A. 203, and about Dr. Imungi's delays in executing key tasks, J.A. 205–06. Dean Angell set up monthly supervision meetings with Dr. Imungi.

In June 2019, Dean Angell reviewed Dr. Imungi's performance for the first time. That assessment covered a period beginning in January 2018, months before Dean Angell arrived, so the Dean evaluated Dr. Imungi's performance against goals set by the previous Interim Dean. Dean Angell rated Dr. Imungi a 4.0 out of 4.0 ("Excellent"). But she also outlined changes Dr. Imungi would need to make to better align with the Dean's new vision for the Office of Field Education, including more collaborative work with other units of the School and a management style that would give more autonomy to Field Education faculty and staff.

During the spring and summer of 2019, Dean Angell began considering changes to the School's leadership. This included exploring how to better match Dr. Imungi's work as the Director of Field Education with Dean Angell's goals for that Office and for the School, and identifying actions – including nonrenewal of the Director appointment – that could be taken if Dr. Imungi proved unable to meet the new expectations.

By the fall of 2019, Dean Angell's concerns about Dr. Imungi were serious enough that she took two important steps. First, it is undisputed that Dean Angell reached out to Human Resources that fall to discuss possible contractual changes to Dr. Imungi's position, given what Dean Angell had identified as differences in their respective visions for the role of Director of Field Education. Second, it is undisputed that Dean Angell spoke directly to Dr. Imungi, and suggested that she step down from her position as Director. Some of the details of that conversation are contested. But the parties agree that in the fall of 2019,

4

Dean Angell proposed that Dr. Imungi leave the Director position and assume the role of a regular faculty member, and that Dr. Imungi declined to do so.

All of this transpired months before the alleged protected activity in this case. According to Dr. Imungi, she first engaged in protected activity in February 2020 when she attended an assembly addressing racism on campus and shared her own experiences of racism as the only Black leader at the School of Social Work. And she again engaged in protected activity in March 2020, Dr. Imungi alleges, when she submitted a self-evaluation saying that she had "experienced a diminishing of [her] leadership role in field education," not because of "the quality of [her] work" but because of "the color of [her] skin." J.A. 880. In response, Dean Angell immediately consulted VCU's Office of Equity and Access Services, and then met with Dr. Imungi to give her information about how to formally report her concerns.

At around the same time, in mid-March 2020, VCU began to shut down its in-person programming in response to the COVID-19 pandemic. The transition to remote learning exacerbated tensions between Dean Angell and Dr. Imungi, who disagreed about how best to handle the situation and about Dr. Imungi's role in online field education. From Dean Angell's perspective, at least, Dr. Imungi was resistant to the ways in which Dean Angell wanted to structure online field education and had difficulty collaborating with other stakeholders. In May 2020, Dean Angell again spoke with HR about possible changes to Dr. Imungi's employment, including nonrenewal of her supplemental appointment as Director of Field Education.

5

On June 3, 2020, Dean Angell gave Dr. Imungi a second annual review, covering the period from March 2019 (after Dean Angell's arrival) to February 2020. This time, Dr. Imungi was rated a 2.2 out of 4.0 ("Satisfactory"). Dean Angell explained that since she had been appointed in 2018, staff and faculty at the Office of Field Education had repeatedly complained about Dr. Imungi's management and supervision. The Dean also recounted Dr. Imungi's difficulty in working collaboratively with other departments and in advancing community partnerships, and her resistance to engaging with online educational programs and to other goals Dean Angell had set for her.

The next day, Dean Angell notified Dr. Imungi that her supplemental appointment as Director of Field Education would not be renewed. Dean Angell did renew Dr. Imungi's underlying faculty appointment as an Associate Professor. But Dr. Imungi's job responsibilities shifted from managing field education to teaching courses, and she no longer received the $10,000 salary supplement that went along with the Director role.

**B.**

After exhausting her administrative remedies, Dr. Imungi filed this action in federal court. Her complaint alleged that VCU's June 2020 nonrenewal of her Director appointment violated Title VII on two grounds: It constituted unlawful discrimination based on race and national origin, and it was unlawful retaliation for her complaints of discrimination in February and March of 2020.[1]

---

[1] Dr. Imungi also asserted two claims under the Virginia Human Rights Act, which VCU moved to dismiss on the basis that there was no applicable private right of action. The district court granted VCU's motion, dismissed the counts without prejudice, and

6

The district court granted VCU's motion for summary judgment on both claims. *Imungi v. Va. Commonwealth Univ.*, No. 3:22-cv-438, 2023 WL 3570925 (E.D. Va. May 19, 2023). Dr. Imungi appeals only as to her retaliation claim. But because the district court's reasoning on the two claims overlaps, we describe it here in full.

The district court first held that Dr. Imungi had not established a prima facie case of race or national origin discrimination. To do so, Dr. Imungi would have to show, among other things, that at the time of her nonrenewal she was meeting VCU's legitimate expectations in her job. *Id.* at *8 (citing *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). But, the court held, "the record is clear that [Dr. Imungi] did not meet [Dean] Angell's legitimate expectations for the role." *Id.* The district court reviewed record evidence dating back "well before 2020" – the "numerous complaints" from faculty and staff about Dr. Imungi's management, Dean Angell's repeated expressions of concern about Dr. Imungi's performance, Dean Angell's consideration of changes to the Director position because "her vision of the [School of Social Work] did not align with [Dr. Imungi's]" – and concluded that the record could not support a finding that Dr. Imungi was meeting Dean Angell's "legitimate expectations for the role of [Director]" when the Dean decided not to renew her appointment. *Id.* at *8–9.[2]

---

granted Dr. Imungi leave to file an amended complaint. She did not file one, so the case proceeded with only the two Title VII claims.

[2] The district court also held that Dr. Imungi could not make a prima facie showing of discrimination because she had failed to identify a valid comparator – a "similarly-situated employee[]" outside the protected class who was "retained under similar

As for retaliation, the district court held that there was no evidence from which a reasonable jury could find that VCU failed to renew Dr. Imungi's Director appointment because of her statements about race discrimination. *Id.* at *10. Dr. Imungi, the court explained, relied on "alleged temporal proximity" between her statements, from February and March of 2020, and her nonrenewal in June of 2020 to show causation. *Id.* But Dean Angell had already asked Dr. Imungi to step down from the Director role months before those statements were made, undermining any inference of retaliation from temporal proximity. *Id.* Moreover, the court concluded, Dr. Imungi had offered no evidence to rebut the legitimate, non-retaliatory explanations offered by VCU for the nonrenewal – that Dean Angell chose not to renew Dr. Imungi's Director appointment because of long-standing performance concerns and because Dr. Imungi was not aligned with the Dean's goals and priorities for the Office of Field Education.

Accordingly, the district court entered summary judgment for VCU on both of Dr. Imungi's claims. Dr. Imungi timely appealed the entry of summary judgment on her retaliation claim.

## II.

We "review a district court's award of summary judgment de novo, applying the same standards as those governing the district court's review of the record." *Cosey v.*

---

circumstances" or otherwise treated more favorably. *Imungi*, 2023 WL 3570925, at *8; *see id.* at *9.

*Prudential Ins. Co. of Am.*, 735 F.3d 161, 170–71 (4th Cir. 2013). "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996) (quoting Fed. R. Civ. P. 56). "If the nonmoving party 'has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof,' summary judgment is appropriate." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To make out a Title VII retaliation claim, Dr. Imungi "must show (1) that she engaged in a protected activity, (2) that her employer took an adverse action against her, and (3) that there was a causal link between the two events." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). VCU may offer evidence to defeat the causation element by "show[ing] that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). But the ultimate burden lies with Dr. Imungi to establish that "she has been the victim of intentional retaliation" – that is, to prove both that VCU's proffered reason for her nonrenewal was "false and that retaliation was the real reason" her appointment was not renewed. *Id.* at 252 (cleaned up).

We agree with the district court that Dr. Imungi has not identified evidence in the record that would allow her to make this showing. Reviewing the record in the light most favorable to Dr. Imungi as the nonmovant, *see Ray v. Roane*, 93 F.4th 651, 655 (4th Cir. 2024), we conclude, like the district court, that the evidence cannot support a finding that

9

retaliation was the "real reason" for Dr. Imungi's nonrenewal – that "but for" her complaints about race discrimination, Dr. Imungi's appointment would have been renewed, *Foster*, 787 F.3d at 252.

To support her contrary position, Dr. Imungi makes two arguments:  first, that there is sufficient temporal proximity between her statements in February and March of 2020 and her nonrenewal in June of 2020 to support an inference of a causal link between the two; and second, that VCU's proffered non-retaliatory explanations for her nonrenewal are pretextual.  As to Dr. Imungi's first argument, there are substantial reasons to doubt that any inference of causation arises from the temporal proximity between Dr. Imungi's statements and her nonrenewal.  Most prominently, as the district court noted, Dr. Imungi admits that Dean Angell no longer wanted Dr. Imungi to serve as Director starting in the fall of 2019, when she asked Dr. Imungi to step down – months before Dr. Imungi engaged in any protected activity.  That order of events bears on the causation question, and it affects any inference of retaliation that might otherwise arise from proximity between Dr. Imungi's complaints and her nonrenewal.  *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("The actions that led to [the plaintiff's] probation and termination began *before* her protected activity, belying the conclusion that a reasonable factfinder might find that [the defendant's] activity was motivated by [her] [protected] complaints.").

Even assuming, however, that Dr. Imungi could rely on temporal proximity to establish an initial inference in favor of causation, VCU still would be entitled to summary judgment.  That is because on this record, as the district court concluded, Dr. Imungi cannot

10

show that VCU's proffered non-retaliatory reasons for her nonrenewal were pretextual – that they were not the "real reasons" for her nonrenewal, and that she was in fact the "victim of intentional retaliation." *Foster*, 787 F.3d at 252. It is important to be clear about the standard we apply here. The question is not whether Dean Angell was *correct* in her evaluation of Dr. Imungi's performance or in her assessment that Dr. Imungi did not share her vision for the Office of Field Education and the role of its Director. The question is whether Dean Angell "actually believed" that Dr. Imungi was a poor match for the Director position for the reasons she gave – or whether a jury could find that Dean Angell's articulated rationales were not the true reasons for Dr. Imungi's nonrenewal. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("[I]t is not our province to decide whether the [proffered] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the adverse action].").

VCU's first rationale for the nonrenewal is Dr. Imungi's performance problems. According to VCU, Dean Angell did not renew Dr. Imungi as Director because of long-standing concerns about her job performance: her ineffectiveness in managing Field Education staff, difficulties collaborating with others, failure to build and support relationships with other stakeholders, and refusal to take an active role in the online field program. To show that this rationale is pretext, Dr. Imungi argues that Dean Angell was incorrect, and that she was in fact a top performer who was highly rated prior to her review in June 2020. But Dr. Imungi cannot prevail on her pretext argument merely by "disput[ing] the merits," *id.* at 280, of Dean Angell's performance appraisal without identifying evidence that calls into question Dean Angell's *belief* in her assessment. And

11

the evidence Dr. Imungi relies on to counter Dean Angell's stated performance concerns is mostly positive feedback from a 2017 peer committee and a 2018 evaluation by the Interim Dean. That is not enough to create a genuine dispute as to whether Dean Angell – the relevant decisionmaker – had a negative view of Dr. Imungi's job performance two to three years later when she chose not to renew Dr. Imungi as Director.[3]

The only evidence Dr. Imungi cites to show that Dean Angell *herself* believed Dr. Imungi was performing well is the June 2019 evaluation in which Dean Angell gave Dr. Imungi a 4.0 rating. That is indeed relevant evidence. But Dr. Imungi offers no response to VCU's explanations for why it cannot support a finding of pretext in this case: First, the 2019 evaluation was not a full reflection of the views of Dean Angell, who arrived at the School of Social Work well into the 2018 to 2019 period under evaluation. It is undisputed that because of Dean Angell's late arrival on the scene, the June 2019 evaluation largely reflected Dr. Imungi's self-evaluation and used the Interim Dean's goals, not Dean Angell's, as the metric. And second, Dean Angell's assessment of Dr. Imungi's performance in 2018 and 2019 cannot by itself create a genuine dispute as to how Dean Angell felt about Dr. Imungi's performance a year later, when she decided not to renew Dr. Imungi's Director appointment. At *that* time, Dean Angell rated Dr. Imungi a 2.2 out of 4.0. And while Dr. Imungi insists that this rating was technically "satisfactory," there

---

[3] Dr. Imungi does argue that Dean Angell should have addressed performance concerns with her earlier. But she does not dispute that Dean Angell indeed raised performance concerns with her in the fall of 2018 and again in the fall of 2019 – prior to any alleged protected activity.

12

is no genuine dispute that this score reflected documented concerns that Dean Angell had about her performance.[4]

VCU's second rationale for the nonrenewal is that Dean Angell wanted someone in the Director role who was better aligned with, and willing to work toward, the Dean's vision for the School of Social Work and Office of Field Education. Dr. Imungi argues that this rationale is pretextual because it reflects subjective criteria. But the use of subjective criteria in employment decisions is not by itself evidence of pretext. *See Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 566 (4th Cir. 2011) (subjective judgments are common in university decision-making and do not themselves show pretext). Even if subjective criteria may sometimes be used to mask improper reasons for an action, Dr. Imungi offers no evidence that any subjective component of Dean Angell's vision was used in that way *here*.[5] *See Ham v. Wash. Suburban Sanitary Comm'n*, 158 F.

---

[4] Dr. Imungi disputes one of Dean Angell's critiques in her 2020 evaluation, arguing that the Dean was wrong to fault her for not taking an active role in developing the online field education program. But again, the question before us is not whether Dean Angell was correct in her assessment, and Dr. Imungi's disagreement with that assessment is not enough to show pretext. *Hawkins*, 203 F.3d at 279–80. In any event, Dr. Imungi admits that she, like others, "was resistant" initially to working on the online program, J.A. 554, and that she delegated administrative work arising from that program to another employee. And she offers no evidence to rebut the fact that Dean Angell genuinely believed there were tensions around Dr. Imungi's participation in online educational programs, which became especially fraught in the spring of 2020 as VCU responded to the pandemic.

[5] Whether Dean Angell's concerns about vision alignment are in fact purely subjective is a different question, and one we need not address. But we note that Dr. Imungi is not clear about what aspects of Dean Angell's goals for the Office of Field Education and its Director she considers problematically subjective. Dean Angell, for instance, wanted a Director who would teach courses, whereas Dr. Imungi believed she should not be expected to teach at the same time she served as Director. That is a conflict of visions,

13

App'x 457, 466–67 (4th Cir. 2005) (employer's preoccupation with subjective qualities that were not pertinent to the job was relevant evidence of pretext, but use of "subjective criteria" does not "standing alone" prove discrimination (quoting *Mallory v. Booth,* 882 F.2d 908, 910 (4th Cir. 1989))).  Without specific record evidence of pretext, Dr. Imungi's general objection to the use of subjective criteria does not refute the legitimate, non-retaliatory rationale offered by VCU.

Dr. Imungi next argues that VCU adopted "shifting explanations" for her nonrenewal, with VCU emphasizing incompatible "visions" rather than performance concerns as its justification.  Dr. Imungi is right on the law:  "[I]nconsistent post-hoc explanations for [] employment decisions" may be "probative of pretext."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002).  But she is wrong on the record, which shows no such inconsistency here.  First, there is no evidence that VCU put more weight on the "vision" rationale than Dean Angell.  What Dr. Imungi points to for this proposition is deposition testimony about Dean Angell's conversation with an HR employee, in which that employee said only that *Dean Angell* considered removing Dr. Imungi in the fall of 2019 because she was concerned that Dr. Imungi's vision did not align with hers.  Second, even if VCU had stressed the lack of a shared vision more than Dean Angell, who also focused on performance concerns, a difference in emphasis among

_____

to be sure, but "a Director who will teach" seems to be a fairly objective metric.  So too with Dean Angell's desire to have the Director explore international field placement options, and her understanding that Dr. Imungi had taken no steps toward that goal.

14

overlapping rationales is not the kind of inconsistency that could give rise to an inference of pretext or show that VCU's "real reason" for nonrenewal was retaliatory.

Nor is there any record evidence to suggest that VCU's rationales were generated "post-hoc" to mask retaliation. *Cf. Dennis*, 290 F.3d at 647. On the contrary: As the district court recounted in addressing Dr. Imungi's discrimination claim, this record is replete with documentation of long-standing concerns about both Dr. Imungi's job performance *and* her willingness to align herself with Dean Angell's goals. That evidence dates back to the spring of 2018 – the first documented staff complaints, raised with the Interim Dean, about Dr. Imungi's supervision – and continues through the fall of 2019, when Dr. Angell met with HR to discuss concerns about the lack of a shared vision between herself and Dr. Imungi and then asked Dr. Imungi to step down from her Director position. All of this happened months before Dr. Imungi's alleged protected activity. We do not think a jury could conclude that a view Dean Angell put on the record with HR and with Dr. Imungi in the fall of 2019 was a post-hoc pretext for retaliation against protected activity that had not yet occurred.

Finally, Dr. Imungi argues that she can show pretext based on alleged deviations by VCU from its normal practices and procedures, claiming that it is unusual for a Dean to remove an administrative Director. We agree with VCU that there is no record evidence to support this conclusion. Dr. Imungi held her Director position under a one-year term contract that could be renewed or not at the Dean's discretion, for any lawful reason. She points to nothing in the record suggesting that it is odd for a new Dean to make new administrative appointments, and indeed, it is undisputed that Dr. Imungi was not the only

15

faculty member whose supplemental administrative appointment was not renewed by Dean Angell.[6]

In sum, we agree with the district court that the record in this case would not allow for a finding that the legitimate, non-retaliatory rationales provided for the decision not to renew Dr. Imungi's administrative appointment were pretext for discrimination. On this record, even viewed in the light most favorable to her, Dr. Imungi is unable to establish that retaliation was the "real reason" and but-for cause of her nonrenewal as Director.

---

[6] In connection with her argument that VCU deviated from normal practices and procedures, on the last page of her brief Dr. Imungi describes Dean Angell as having "at one point decided to terminate [her] employment [] altogether, a drastic decision that lasted only a short period of time before she backtracked." Br. of Appellant at 35. But Dr. Imungi does not develop that point, or identify any evidence that it would be a departure from standard practice for VCU or Dean Angell to consider more than one option for dealing with a personnel situation, or even to vacillate before choosing the one that is less "drastic."

Our dissenting colleague uses Dean Angell's purported "backtrack" to make a different point, recounting several emails that suggest, he says, that the University indeed contemplated terminating Dr. Imungi's employment outright and then rejected that idea for reasons having to do with "risk" and a consultation with an unidentified "Jake." From that, the dissent argues, a reasonable jury could infer that dissatisfaction with Dr. Imungi's performance and concerns about vision alignment were pretexts, and that VCU, set on retaliation, adopted the punitive action least likely to raise litigation risks.

We do not fault the University for failing to address on appeal an argument that goes beyond Dr. Imungi's appellate briefing. The emails featured in the dissent – alluding to "risk" and whether VCU might be "flagged as singling [Dr. Imungi] out" – do not appear in Dr. Imungi's brief. Nor does any suggestion that soliciting legal advice in connection with a personnel issue was a deviation from VCU's standard procedure or could otherwise give rise to an inference of retaliatory intent. Finally, it is neither surprising nor suspicious – and Dr. Imungi does not argue otherwise – that the reasons given by VCU for the action it took (nonrenewal of Dr. Imungi's administrative appointment) might not also explain a different action it did *not* take and has thus had no occasion to justify (removal of Dr. Imungi's teaching responsibilities).

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment to Virginia Commonwealth University.

*AFFIRMED*

WYNN, Circuit Judge, dissenting:

With much respect for the well-constructed opinion of my esteemed colleagues, I find that the facts of this case present a much closer question than the majority opinion acknowledges. Because I believe that there are material facts in dispute, I would reverse the district court's grant of summary judgment.

In its discussion, the majority opinion loses sight of the applicable standard. Summary judgment is to be awarded only if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. And, at this stage, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

This Court has long held that summary judgment should be used only sparingly in employment discrimination—and, by extension, employment retaliation—cases. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987). This is so because "motive often is the critical issue in employment discrimination cases." *Id.* (quoting *Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1272 (4th Cir. 1981)). And because employers rarely maintain records directly showing retaliatory intent, these cases often entail drawing inferences from the available facts to resolve questions concerning an individual's state of mind. As a result, we have held that summary judgment in such cases is "seldom appropriate." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 669 (4th Cir. 2018) (quoting *Ballinger*, 815 F.3d at 1005). This approach conforms to

18

that of other federal courts of appeal.[1]

The majority opinion adeptly observes that Dr. Imungi's arguments fall into two categories: first, those relating to the temporal proximity between her protected activity and the nonrenewal of her appointment; and second, those relating to demonstrating that the University's proffered explanations for her nonrenewal are pretextual. I will follow this structure.

The majority opinion does not reject Dr. Imungi's temporal-proximity argument outright, resting instead on her second set of arguments.[2] Still, it casts significant doubt on whether Dr. Imungi can show temporal proximity, stating that "Dean Angell no longer wanted Dr. Imungi to serve as Director starting in the fall of 2019, when she asked Dr. Imungi to step down." Maj. Op. at 10. But it is not clear that the fall of 2019 is, in fact, when Dean Angell made the decision. Indeed, Dean Angell herself testified that even

---

[1] *See, e.g.*, *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008); *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993); *Regner v. City of Chicago*, 789 F.2d 534, 536 (7th Cir. 1986); *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996); *Woodruff v. Peters*, 482 F.3d 521, 526 (D.C. Cir. 2007).

[2] The majority opinion also cites this Court's case law for the proposition that the order of events "affects any inference of retaliation that might otherwise arise from proximity between Dr. Imungi's complaints and her nonrenewal." Maj. Op. at 10 (citing *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006)). This is, of course, an accurate recitation of our law. And gradual adverse employment actions taken before the protected activity can be enough, "[w]here timing is the only basis for a claim of retaliation," to destroy an inference of retaliation. *Booz, Allen & Hamilton*, 452 F.3d at 309 (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)). But, as the remainder of this dissent will make clear, Dr. Imungi does not have to rely only on timing; rather, she can also utilize other evidence to show a retaliatory motivation.

19

though she had "strongly considered" not renewing Dr. Imungi as Director of Field Education "in early December 2019," she "made the final decision . . . during the spring of 2020"—that is, *after* Dr. Imungi engaged in protected activity. J.A. 639.[3] A jury could reasonably credit the deposition testimony of Dean Angell and find that the decision not to renew Dr. Imungi's supplemental appointment occurred in the spring of 2020, after Dr. Imungi had engaged in the protected activity, and not in the fall of 2019. Indeed, when asked whether "VCU ma[de] the final decision to remove Dr. Imungi from her position of Director of Education on or about June 4," the University's organizational designee testified that "the decision to reassign her" was made "around that time." J.A. 817.

That brings me to the second set of arguments—those related to pretext. The majority opinion concludes that Dr. Imungi has not sown doubt as to the University's proffered non-retaliatory reasons for nonrenewal. According to the majority opinion, there is no genuine dispute of fact that Dean Angell was unsatisfied with Dr. Imungi's performance as Director of Field Education and felt that she wanted someone more aligned with her vision for the School of Social Work and Office of Field Education.[4] And for these two reasons, on June 4, 2020, Dean Angell notified Dr. Imungi that her supplemental

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[4] This is despite incongruity in the record relating to the rationale behind Dr. Imungi's nonrenewal—namely, the University's organizational designee agreeing that the reason for Dr. Imungi's removal as Director of Field Education was "not necessarily related to [her] performance" and instead was "primarily because Dr. Angell's vision of the school of education did not align with Dr. Imungi's." J.A. 814–15.

appointment as Director of Field Education would not be renewed but that her underlying appointment as an Associate Professor would be renewed.

But a week later, on Friday, June 12, Human Resources Administrator Whitney Brown sent an email to another University administrator titled "Draft Terminal Contract," which suggested that the University had contemplated terminating Dr. Imungi outright: "[a]fter some discussion, it has been decided that at this time we will move forward with issuing Muthoni Imungi a terminal contract." J.A. 604. As Dean Angell is the only person copied on the email and there were no other recipients, a jury could reasonably infer that the referenced discussion about terminating Dr. Imungi was between Brown and Angell.

This plan appears to have quickly been scuttled because on Monday afternoon, Brown floated a different proposal: reducing Dr. Imungi's salary by converting her "from 12 month to 9-month faculty." J.A. 882. Dean Angell found that suggestion "worth considering" but posed the question of "whether it would be flagged as singling [Dr. Imungi] out if I don't convert everyone else in a similar position to 9 months?" J.A. 882. Brown replied that "B[e]cause of everything going on with this situation I think we should propose this question to Jake tomorrow, to see if it would pose a risk." J.A. 883. (The record is not clear about the identity of Jake, but from context, it is clear that Jake was someone who would provide insight into risk assessment, including, possibly, legal risks.)

So on June 4, the University informed Dr. Imungi that she would retain her underlying appointment as a professor, but the next week it contemplated terminating her outright or reducing her salary. Yet none of the explanations for Dr. Imungi's nonrenewal as the Director of Field Education proffered by the University and accepted by the majority

21

opinion bear on Dr. Imungi's teaching abilities. The record reveals that in January 2018, the Interim Dean had described Dr. Imungi's teaching as "excellent," and, as a result, Dr. Imungi was promoted from assistant professor to associate professor. J.A. 761.

If the reason that Dr. Imungi was not reappointed as the Director of Field Education was that she did not conform to the "vision" set by Dean Angell, why did the University consider having her removed as an associate professor—a role where Dean Angell's "vision" is presumably less relevant? And even if the University could point to evidence in the record showing doubt about Dr. Imungi's ability to teach—it hasn't, and it can't— why did the University consider punishing her by reducing her salary, an action unlikely to remedy any teaching shortcomings?

When viewed in the light most favorable to Dr. Imungi, these emails suggest that the University considered numerous retaliatory actions in response to her decision to file a complaint of discrimination. The University then adopted the one retaliatory measure that would not be "flagged" for "singling [her] out"—or, in other words, generating evidence suggestive of retaliatory animus—given "everything going on with this situation." J.A. 882–83. As Dr. Imungi put it, the emails "demonstrate[] that Angell was acting to protect herself and VCU from the foreseeable consequences of her retaliatory actions." Opening Br. at 35.[5]

---

[5] The majority opinion determines that this is "an argument that goes beyond Dr. Imungi's appellate briefing." Maj. Op. at 16 n.6. But, again, I read the record in this case slightly differently than do my friends in the majority. Dr. Imungi's opposition to summary judgment identified additional material facts for the district court's consideration. Among these facts were the emails from June 12 and June 15, 2020. *See* J.A. 564 ¶¶ 71, 72. In the

22

Confronted with this evidence, the University makes no response on appeal. Below, however, the University argued that "[t]hese emails and VCU's internal considerations are immaterial to Plaintiff's retaliation claim because the undisputed facts confirm that Plaintiff received a 12-month term faculty contract." J.A. 909. But this response fails to grapple with Dr. Imungi's compelling argument that inferences drawn from the emails' content suggest that the true reason that Dr. Imungi's supplemental appointment was not renewed was not due to a mismatch of visions but instead was animated by the University's desire to retaliate against her complaints of discrimination without leaving behind direct evidence.

Because, when viewed in the light most favorable to Dr. Imungi, the evidence can support a finding that retaliation was the reason for her nonrenewal, I respectfully dissent.

---

argument section of the same filing, Dr. Imungi again summarized the content of, and quoted from, those emails in a portion of the brief under the subheading "VCU's reasons for demoting Dr. Imungi are pretext for retaliation." *See* J.A. 573. And she concluded that "VCU's reasons for Dr. Imungi's removal are unsupported, inconsistent, and deviate from normal practices, demonstrating that that [sic] VCU's proffered business reason is simply pretext for illegal retaliation." J.A. 574. In response to those arguments, the University asserted that the emails are "immaterial." J.A. 909.

In her opening brief to this Court, Dr. Imungi again raised the emails from June 12 and June 15, 2020. She first summarized both sets of emails, provided a citation to the record, and argued that they "represent[] continuing animus by VCU." Opening Br. at 24. Later, under the subheading "Imungi has provided sufficient evidence [that] VCU's proffered legitimate business reason is pretext for retaliation," Dr. Imungi argued that the emails "demonstrate[] that Angell was acting to protect herself and VCU from the foreseeable consequences of her retaliatory action." Opening Br. at 35. I view these statements as sufficient to support the argument that the emails represent continuing animus which serves as evidence of pretext—the same argument she made to the district court. This time, however, the University chose to remain silent. Unlike the majority opinion, I do find fault in the University's decision not to respond to this argument.